[Cite as *State v. Lucas*, 2021-Ohio-437.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,                :

                             No. 108436

    v.                                 :

CHARLES LUCAS,                             :

    Defendant-Appellant.               :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** APPLICATION DENIED
**RELEASED AND JOURNALIZED:** February 12, 2021

---

Cuyahoga County Court of Common Pleas
Case No. CR-16-609934-A
Application for Reopening
Motion No. 540187

---

#### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee.*

Charles Lucas, *pro se.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} On July 27, 2020, the applicant, Charles Lucas, pursuant to App.R. 26(B), applied to reopen this court's judgment in *State v. Lucas,* 8th Dist. Cuyahoga No. 108436, 2020-Ohio-1602, which affirmed his convictions for attempted murder

and breaking and entering.  Lucas now submits that his appellate counsel should have argued that there was no probable cause to justify a grand jury indictment, an arrest, or prosecution because the state used perjured testimony and fraudulently contrived misrepresentations.  The state of Ohio filed its brief in opposition on August 7, 2020, and Lucas filed a reply brief on August 18, 2020.  For the following reasons, this court denies the application.

Factual and Procedural Background

{¶ 2} Charles Lucas and Kimberly Parker were in a tumultuous relationship that began in 2010.  Although they traveled a lot, they lived together whenever they could and even jointly bought a house in Florida.  Parker testified that Lucas was a controlling and abusive individual, who had to know her location, her email, and her passwords.  She continued that he took offense at her interactions with other men and that she tried to end their relationship several times.

{¶ 3} Lucas testified that generally the relationship was good and that he sought to look after Parker but not control her.  Indeed, many of her representations of him were lies.  Nonetheless, he decided to end their relationship in 2015, because she yelled and argued too much.  However, they remained in contact because they were working in the same industry and needed to resolve some property issues.

{¶ 4} Parker testified that she decided to end their relationship in May 2016, when she was working in Wisconsin.  To get away from Lucas, she quit her job, changed all of her passwords, and went to her home on East 131st Street in Garfield Heights.  When she went to bed that night, she locked her bedroom door

and the door to a "sitting room" outside of her bedroom. The next morning, between 9:00 and 9:30, she heard someone trying to enter her bedroom. When she asked who was there, she recognized Lucas's voice. She told him to go away and called 911 to report an intruder. She told Lucas that the police were coming. Lucas tried to force the door. Parker then remembered that Lucas kept a 9 mm handgun in the bedroom. She retrieved it and ordered him not to come into the room. When he continued his efforts, she shot through the door toward the ground. A bullet lodged in a wall in the next room. Parker called 911 again and advised that she had fired the gun. When the police arrived, they arrested her, and she was charged with discharging a firearm in a prohibited premises and domestic violence. *State v. Parker*, Garfield Heights M.C. No. CRB 1601150A.

{¶ 5} Lucas was told that he needed to attend a July 5, 2016 pretrial hearing in that case. Accordingly, he booked flights to come to Cleveland for the pretrial and return to Florida on the morning of July 7. He also rented a white Ford Fusion and booked lodging at a guesthouse in East Cleveland. Lucas testified that before the pretrial the prosecutor informed him that he intended to dismiss the case against Parker. Lucas further testified that this news angered him. The pretrial mainly concerned setting another pretrial and figuring out when and how Parker could retrieve her property from the home in Florida. Parker testified that during the pretrial, Lucas called her a b****.

{¶ 6} At approximately 2:40 a.m. on July 7, 2016, Parker woke up to the smell of smoke. Upon further investigation, she noticed a hole in the window of her

bedroom and that the blinds were burnt. She called the police and remained close to the floor until their arrival. The police noted the bullet traveled through a wall and left remains on a towel in the bathroom. Further investigation showed that a gun was fired at near point-blank range to the window and that the bullet travelled only a few feet above the sleeping Parker.

{¶ 7} East 131st Street is a north-south street that intersects McCracken, an east-west street, at a right angle. Garfield Heights has a service garage approximately a half-mile to the east of 131st Street. The garage's security camera showed a white car traveling east on McCracken and at 2:11 a.m. a man walking westbound on McCracken. The camera further showed a man at 2:43 a.m. running eastbound on McCracken.

{¶ 8} Further investigation showed that Lucas left the guesthouse at 1:30 a.m. on July 7. The investigating officer then obtained a search warrant for Lucas's cell phone records. Those showed that he was on Lee Road in Shaker Heights at 1:50 a.m., and very near McCracken Road at 2:50, by Broadway and I-480.

{¶ 9} In September 2016, the Cuyahoga County Grand Jury indicted Lucas for attempted murder with a three-year firearm specification, improperly discharging a firearm into a residence, felonious assault, breaking and entering, and domestic violence.[1] The state later dismissed the domestic violence count. A jury

---

[1] The evidence at trial indicated that Parker's house was enclosed by a high fence. She testified that shortly before the shooting incident, the latch to the gate had been bent, so the gate could not be locked.

found him guilty of the remaining counts. The trial judge merged the attempted murder, felonious assault, and improper discharge counts and sentenced him a total of 11 years.

{¶ 10} Lucas's appellate counsel argued the following: (1) Lucas was denied due process of law and his right to counsel when his trial counsel displayed animus toward and bias against him in a recorded conversation.[2] (2) Lucas was denied due process of law and his right to the effective assistance of counsel, when that counsel left the courtroom during the examination of the government's detective. (3) Lucas was denied his right to counsel when the trial court instructed him that he could not consult with counsel during a break in the trial. (4) The appellant's convictions were not supported by sufficient evidence. (5) The trial court committed plain error in allowing testimony of alleged "other acts" of Lucas in addition to allowing evidence that he was a controlling boyfriend. (6) Trial counsel was ineffective when he failed to object to numerous instances of inadmissible evidence. (7) Trial counsel was ineffective when he failed to offer a meaningful and reliable testing of the adversarial system. (8) Lucas was denied a fair trial when a law enforcement officer was permitted to testify as a geolocation expert using business records of the phone company. (9) The trial court erred in allowing the prosecutor to present evidence of

---

[2] In that conversation, Lucas's retained counsel said that you do not want me picking your jury, if I am unpaid.

Lucas's prearrest silence.[3]  (10) The prosecutor committed prosecutorial misconduct during closing argument when he made repeated attacks on defense counsel's honesty.  Lucas now argues that his appellate counsel was ineffective.

Discussion of Law

{¶ 11}  An application for reopening must be granted "if there is a genuine issue as to whether a defendant has received ineffective assistance of appellate counsel on appeal."  App.R. 26(B)(5).  The Supreme Court of Ohio has held that the two-pronged analysis found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is the appropriate standard when assessing whether an applicant has raised a "genuine issue" as to the ineffectiveness of appellate counsel in an App.R. 26(B) application.  *State v. Myers,* 102 Ohio St.3d 310, 2004-Ohio-3075, 810 N.E.2d 436.

{¶ 12} Pursuant to *Strickland,* the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

{¶ 13}  In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential.  The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight,

---

[3] The investigating officer testified that after several phone conversations with Lucas, he left Lucas a message that Lucas needed to arrange an interview to clear up some things and that Lucas never called him back.

to conclude that a particular act or omission was deficient.  Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶ 14} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions.  The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).  Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue.  Such rules would disserve the goal of vigorous and effective advocacy.  The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

{¶ 15} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under the circumstances of the case, petitioner must further establish prejudice:  but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶ 16} Appellate review is strictly limited to the record. *The Warder, Bushnell & Glessner Co. v. Jacobs*, 58 Ohio St. 77, 50 N.E. 97 (1898). Thus, "a reviewing court cannot add matter to the record that was not part of the trial court's proceedings and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. "Nor can the effectiveness of appellate counsel be judged by adding new matter to the record and then arguing that counsel should have raised these new issues revealed by the newly added material." *State v. Moore*, 93 Ohio St.3d 649, 650, 2001-Ohio-1892, 758 N.E.2d 1130. "Clearly, declining to raise claims without record support cannot constitute ineffective assistance of appellate counsel." *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, 776 N.E.2d 79, ¶ 10.

{¶ 17} The gravamen of Lucas's argument is that the state presented perjured evidence or made multiple misrepresentations that nullify its case.[4] Lucas first argues that Parker perjured herself when she testified that Lucas called her a

---

[4] Lucas states his proposed assignment of error as follows: "Appellate counsel was ineffective for failing to raise the issue, effectively argue or make as an error that there was no probable cause to justify a grand jury indictment, an arrest or prosecution violating Lucas's Fourth Amendment Right to the U.S. Constitution by the state's malicious prosecution of Lucas through fraudulently contrived misrepresentation(s) of evidence and the use of perjured testimony violating Prof. Cond. R. 3.8(A), Prof. Cond. R. 8.4, Evid. R. 403, and denying Lucas of his due process right."

b**** during the pretrial and that he was visibly angry and that he pulled his attorney away in an attempt to have her charged with attempted murder. For proof that this was a lie, he proffers a youtube video of the pretrial at https://youtube/oloAy81GT9s. A review of the video shows Lucas making a remark under his breath, not inconsistent with calling her a b****, and then being admonished that the comment was out of line and for which Lucas apologized. Although the video does not show Lucas arguing with the prosecutor, he admitted when the prosecutor told him he was going to drop the charges, he was "F'ing pissed off." Tr. 671-673.

{¶ 18} At the trial, immediately after questioning Parker about the pretrial, the prosecutor asked her if the case was dismissed, to which she said "yes." Tr. 287. Lucas infers from this that she perjured herself by stating her case was dismissed on July 5, when it was not dismissed until October. A review of the transcript shows that she truthfully answered the prosecutor's question. Thus, in reviewing Lucas's argument on the pretrial, the court is not convinced that Parker perjured herself. To the extent that Lucas's argument is that the perjury about the pretrial was essential to finding probable cause for the search warrant, his arrest, indictment, and conviction, it is ill-founded.

{¶ 19} Lucas makes additional arguments to show that the state acted in bad faith and did not have probable cause to prosecute him. He argues that the grand jury indicted him for attempted felony murder, but the indictment shows the charge was for attempted murder. He argues that there was no proof to support the three-

year firearm specification. However, the bullet hole in the window, the gunshot residue on the window, the hole in the wall, and bullet fragments found in the bathroom leave little doubt that a firearm was used. Lucas also mentions that in June, between the two incidents, he made a police report that Parker was harassing and trying to extort him regarding their property issues. He alleges that sometime during this process, the investigating officer made a racial slur. However, he does not point to where in the record this is found. It is the appellant's duty to point to facts within the record that demonstrates error. Similarly, he contends that perjured evidence was presented to the grand jury. However, he does not quote the actual grand jury testimony, but relies on a police summary of evidence to be presented to the grand jury. It is not the duty of the appellate court to search the record for evidence to support the appellant's argument. *State v. Reeves,* 10th Dist. Franklin No. 09AP-493, 2010-Ohio-4018, and *State v. McGuire,* 9th Dist. Summit Nos. 16423 and 16431, 1994 Ohio App. LEXIS 5670 (Dec. 14, 1994).

{¶ 20} Lucas also complains that when he reported Parker's harassment, he also reported that BCI had not yet processed the May shooting and that the Garfield Heights officers did nothing. From this he argues that the officers were derelict in their duties and showed animus against him. He also submits that because BCI was not called, any evidence from the May shooting is inadmissible and could not provide any basis for the search warrant against him. The court is not persuaded that such omissions, if any, manifest animus against him.

{¶ 21} Similarly, he notes that one of the police reports indicates that the quickest way for him to get to McCracken Road and Parker's house would be to travel west on McCracken, but the video shows the car traveling east. Again he argues a lack of probable cause. Speculation on what should have been done does not negate the evidence presented.

{¶ 22} Lucas also relies heavily on newly discovered evidence for proof of perjury and malice. The "Z" exhibits he attached to the application have receiving dates of March and June 2020, well after the appeal had been filed. For purposes of determining ineffective assistance of appellate counsel, such exhibits are irrelevant. Appellate counsel and the appellate courts are bound by the record. It is inappropriate to consider on appeal matters and evidence outside of the record. Thus, to the extent that Lucas's arguments are dependent on material outside the record, his arguments are ill-founded.

{¶ 23} In determining the sufficiency of a search warrant, the judge is to make a practical, common-sense decision, based on the statements in the affidavit and the evidence presented, whether there is a fair probability that evidence of a crime will be found in a particular place. Given the tumultuous relationship between Lucas and Parker, given the fact that she shot at him through a door, given his admitted anger on July 5, that she would not prosecuted, and given the evidence of a gunshot into her bedroom, it is understandable that appellate counsel would decide in the exercise of professional judgment not argue the issue of probable cause for the search warrant. Obtaining evidence of where Lucas was in the early morning

of July 7, 2016, would help determine whether he did or did not commit the crime. *State v. Akers,* 12th Dist. Butler No. CA1007-07-163, 2008-Ohio-4164.

{¶ 24} Similarly, a grand jury indictment creates a presumption of probable cause. *State v. Thomas,* 8th Dist. Cuyahoga No. 104174, 2017-Ohio-957. In the present case, that presumption is bolstered by a jury conviction. To overcome both presumptions by proving from the record that the indictment and the conviction were secured by perjured evidence and a conspiracy of false and malicious statements is an extraordinary task on appeal. This court has examined Lucas's arguments and his proffers and is not convinced that perjury and falsehood were the basis for his indictment and conviction. Appellate counsel in the exercise of professional judgment could properly decline to make Lucas's proposed argument, especially in view of the arguments he did make.

{¶ 25} Accordingly, this court denies the application to reopen.

_____
FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, A.J., and
MARY EILEEN KILBANE, J., CONCUR