[Cite as *State v. Williams*, 2024-Ohio-311.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 23AP-144 |
| v. | : | (M.C. No. 2021 TRC 101449) |
| Alvon L. Williams, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 30, 2024

**On brief:** *Zach M. Klein*, City Attorney, and *Melanie R. Tobias-Hunter*, for appellee. **Argued:** *Dave Pelletier.*

**On brief:** *Alana Van Gundy*, for appellant. **Argued**: *Alana Van Gundy.*

APPEAL from the Franklin County Municipal Court

EDELSTEIN, J.

{¶ 1} Defendant-appellant, Alvon L. Williams, was convicted of operating a motor vehicle while under the influence of alcohol ("OVI") and a marked lanes violation following a jury trial. Mr. Williams now appeals, alleging that his breathalyzer test results should have been suppressed and that his OVI conviction is against the manifest weight of the evidence. But, as explained below, we disagree. Accordingly, we affirm the judgment of the Franklin County Municipal Court.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} Around 10:57 p.m. on January 16, 2021, Mr. Williams was driving home when he crossed the roadway's outer marked lane line and drove up on a concrete median barrier while making a right turn.

{¶ 3}   Ohio State Highway Patrol Trooper Michael Lee was on patrol that night, and while driving in his cruiser behind Mr. Williams's vehicle, he noticed Mr. Williams's vehicle speeding.  (*See* Feb. 2 and 3, 2023 Tr. Vol. II at 108-13.)  Due to traffic and roadway conditions, however, Trooper Lee could not get an exact speed or immediately pull Mr. Williams over.  (Tr. Vol. II at 108-09, 161-62.)  Thus, Trooper Lee turned on his cruiser's dashboard camera, began following Mr. Williams's vehicle, and witnessed his vehicle commit a marked lanes violation and strike the median.  (Tr. Vol. II at 108-113, 162-63.)  This event was captured on his cruiser camera.  (*See* Ex. A. *See also* Tr. Vol. II at 110-13.)

{¶ 4}   Based on his observations of Mr. Williams's driving, Trooper Lee decided to initiate a traffic stop and activated his overhead lights.  (*See* Tr. Vol. II at 108-13, 147, 164.)  Mr. Williams pulled over two seconds later.  (Tr. Vol. II at 113.)  Mr. Williams claimed he struck the median because he was using his cellphone.  (Tr. Vol. II at 114.)  But, on approach, Trooper Lee noticed that Mr. Williams had bloodshot and glassy eyes and detected an odor of alcohol emanating from inside Mr. Williams's car.  (Tr. Vol. II at 114-15.)  Of note, Mr. Williams was alone when he was stopped.  (Tr. Vol. II at 114.)

{¶ 5}   Trooper Lee then asked Mr. Williams to exit his vehicle because he believed Mr. Williams might be impaired and wanted to administer standard field sobriety tests.  (Tr. Vol. II at 115-16.)  Mr. Williams acquiesced to Trooper Lee's request, and Trooper Lee administered several field sobriety tests on the concrete roadside, as outlined in the National Highway Traffic Safety Administration ("NHTSA") manual.  (*See* Tr. Vol. II at 118.)  It is without question that Trooper Lee had the requisite qualifications and experience to administer these tests.  (*See* Tr. Vol. II at 116-42.)

{¶ 6}   Trooper Lee described the roadway where the tests were administered as "mostly flat" and wet "from the previous rain."  (Tr. Vol. II at 118-19.  *See also* Tr. Vol. II at 161.)  And, although mild precipitation can be observed in the cruiser camera footage, on review, we generally agree with Trooper Lee's assessment that, when the field sobriety tests were administered, it was relatively clear (Tr. Vol. II at 109, 119) and the roadway was adequately lit by streetlights and his cruiser's headlights (Tr. Vol. II at 114-15).  (*See* Ex. A.)

{¶ 7}   On preliminary screening, Mr. Williams did not present with unequal sized pupils, resting nystagmus (involuntary jerking of the eye), or unequal tracking of the eyes—any one of which could suggest he had some type of neurological issue that might impact

his performance on the field sobriety tests. (Tr. Vol. II at 119-20, 124-25.) After making these initial determinations, Trooper Lee administered the horizontal gaze nystagmus ("HGN"), vertical gaze nystagmus ("VGN"), walk-and-turn, and one-legged stand standardized field sobriety tests in addition to a series of verbal non-standardized tests. (*See* Tr. Vol. II at 123-43.) Mr. Williams's performance on these tests was captured on Trooper Lee's cruiser camera and body microphone. (*See* Ex. A.)

{¶ 8} Trooper Lee testified that Mr. Williams exhibited six out of six clues on the HGN test.[1] (Tr. Vol. II at 126-29.) Of note, Trooper Lee stated that the presence of four clues is a reliable indicator of impairment. (Tr. Vol. II at 129.) Trooper Lee also conducted a VGN test and noted that VGN at maximum deviation was present. (*See* Tr. Vol. II at 130-31.) He explained that such presence generally suggests a "higher test, usually above a .1 alcohol content of breath." (Tr. Vol. II at 130.) During the walk-and-turn test,[2] Trooper Lee noticed three of eight clues, with only two clues necessary to suggest impairment. (*See* Tr. Vol. II at 131-37.) Specifically, Trooper Lee testified that Mr. Williams began the test too soon, took the wrong number of steps, and stepped off the line. (Tr. Vol. II at 136.) And while administering the one-legged stand test,[3] Trooper Lee observed Mr. Williams sway throughout the test, put his foot down on the ground twice, and hold his arms more than six inches away from his body. (*See* Tr. Vol. II at 138-41.) Of the four clues possible, Mr. Williams exhibited three. (Tr. Vol. II at 141.) Trooper Lee testified that the presence of just two clues on this test indicated impairment. (Tr. Vol. II at 139, 141.)

---

[1] The HGN and VGN tests are administered to detect involuntary jerking of the eye when viewing or tracking a stimulus—here, a pen light—which can be a sign of intoxication. (*See* Tr. Vol. II at 120-21.) In the HGN test, an officer holds a stimulus, 12 to 15 inches away from an individual's face, and the individual is directed to follow the stimulus with his or her eyes. (*See* Tr. Vol. II at 124-25.) Officers assess intoxication based on whether the eyes follow the stimulus smoothly, bounce around, or exhibit "involuntary jerking." *State v. Adams*, 2d Dist. No. 27141, 2017-Ohio-7743, ¶ 11.

[2] "The walk-and-turn test requires the suspect to walk a given number of steps, heel-to-toe, in a straight line. The suspect is then told to turn around and walk back in the same manner. During the test, the suspect is told to keep his or her hands at his or her sides. The officer assesses a suspect's performance according to the degree to which the suspect exhibits a lack of balance or coordination." *State v. Homan*, 89 Ohio St.3d 421 (2000) fn. 2, citing 1 Erwin, Defense of Drunk Driving Cases, Section 10.03[2] (3d Ed.1997).

[3] "The one-leg-stand test requires the suspect to stand with his or her feet together and his or her arms at his or her sides. The suspect is then told to hold one leg straight and forward about eight to twelve inches off the ground for approximately thirty seconds. While in this position, the suspect counts off the number of seconds. At all times, the suspect is to keep his or her arms at his or her sides and to watch his or her raised foot. The officer demonstrates the test before administering it." *Homan* at 422, fn. 3, citing 1 Erwin, Defense of Drunk Driving Cases, Section 10.04[1] (3d Ed.1997).

{¶ 9} Mr. Williams also unsuccessfully completed two non-standardized verbal tests. Trooper Lee asked Mr. Williams to recite the alphabet starting with the letter D, but he started with the letter A. (Tr. Vol. II at 142.) Trooper Lee also asked Mr. Williams to count backwards from 68 to 53, but Mr. Williams stopped at 55. (Tr. Vol. II at 142.) And after Mr. Williams completed those two tests, he admitted to Trooper Lee that he had consumed "two Southern Comfort drinks" earlier that evening. (*See* Tr. Vol. II at 142-43. *See also* Tr. Vol. II at 190-91.)

{¶ 10} Trooper Lee testified that, based on his training and experience, the clues he observed on the standardized field sobriety tests, and the totality of the circumstances, he believed Mr. Williams was impaired at the time he was operating his vehicle. (Tr. Vol. II at 143-44.) Accordingly, Trooper Lee placed Mr. Williams under arrest for OVI. (Tr. Vol. II at 143-44.)

{¶ 11} After arresting Mr. Williams, Trooper Lee asked him to submit to a breathalyzer test, to which Mr. Williams agreed. (Tr. Vol. II at 144-46. *See also* Ex. B.) Trooper Lee took Mr. Williams to the highway patrol's Columbus post and administered the test shortly after midnight. (Tr. Vol. II at 147-48.) It registered a breath alcohol concentration level of 0.125, well over the 0.08 legal limit for driving in Ohio. (Tr. Vol. II at 156-57; Ex. D.) Mr. Williams was charged with OVI as both an "impaired driving" offense under R.C. 4511.19(A)(1)(a) and a "per se" (breath alcohol concentration level of 0.08-0.169) offense under R.C. 4511.19(A)(1)(d). He was also cited with a minor misdemeanor marked lanes violation under R.C. 4511.33.

{¶ 12} Following a jury trial on the two OVI offenses, Mr. Williams was found guilty of both impaired driving and the per se OVI violation. (Tr. Vol. II at 233-34.) The trial court also found him guilty of the marked lanes violation and immediately proceeded to sentencing. (Tr. Vol. II at 235-36.) After the trial prosecutor elected to proceed on the impaired driving offense, the trial court sentenced Mr. Williams to three days in jail, awarded him jail-time credit in lieu of incarceration for the three-day driver intervention program he completed prior to trial, and suspended his driver's license for one year. (Tr. Vol. II at 235-39. *See* Feb. 3, 2023 Sentence Entry.)

{¶ 13} Mr. Williams timely appealed from the trial court's February 3, 2023 judgment of conviction and sentence. He asserts on appeal the following two assignments of error for our review:

> [I.] The breathalyzer test should have been suppressed and the court should not have allowed the breathalyzer test to be admitted as evidence in court.

> [II.] Mr. William[s]'s conviction is against the manifest weight of the evidence.

## II. ANALYSIS

### A. First Assignment of Error

{¶ 14} In his first assignment of error, Mr. Williams contends that the "breathalyzer test should have been suppressed" and attributes error to the trial court's admission of it as evidence at trial. (Brief of Appellant at 7-9.)

{¶ 15} Mr. Williams's initial trial counsel filed a motion to suppress the results of the field sobriety tests and the breathalyzer test. But, after his original trial counsel was permitted to withdraw from representation and a different trial court judge was assigned to Mr. Williams's case,[4] no subsequent pre-trial suppression motions were filed. As such,

---

[4] Mr. Williams entered into a plea agreement in absentia on April 15, 2021 to an amended charge of having physical control of a vehicle while under the influence under R.C. 4511.194. The matter was scheduled for sentencing on September 22, 2021 before a different trial court judge and Mr. Williams was instructed to complete the driver intervention program prior to that date (which he did). But, while awaiting sentencing, Mr. Williams—who was, at that time, employed as a commercial truck driver—became concerned about the ramifications his guilty plea would have on his commercial driver's license and employment. Because Mr. Williams ultimately decided in late September 2021 that he wanted to further litigate the case, his original trial counsel filed a motion to suppress the results of the field sobriety and breathalyzer tests, moved to withdraw Mr. Williams's plea, and, later, moved to withdraw as counsel for Mr. Williams. After the trial court permitted Mr. Williams to withdraw his plea and his original trial counsel to withdraw from representation on September 27, 2021, Mr. Williams entered pleas of not guilty to all charges and a different trial court judge was assigned to preside over his case. Although new defense counsel entered his appearance in the case below on November 30, 2021 (*see* Nov. 30, 2021 Entry) and the matter was set for a motion hearing on June 21, 2022 in anticipation of a defense motion being filed (*see* Apr. 28, 2022 Entry), no motion was filed before that scheduled hearing date (*see* June 21, 2022 Entry). The trial court thus scheduled the matter for a jury trial in July 2022. Mr. Williams's trial was considerably delayed, however, because of his second counsel's unavailability due to illness. (*See* Aug. 9, 2022 Mot.; Aug. 15, 2022 Entry; Sept. 19, 2022 Mot.; Sept. 20, 2022 Entry.) Around October 27, 2022, the trial court learned that Mr. Williams's second trial counsel indicated via text message that he would be withdrawing as counsel. (Oct. 27, 2022 Entry.) Although counsel never filed a formal motion, the Franklin County Public Defender's Office filed a demand for discovery and motion to preserve evidence in Mr. Williams's case in early November 2022 and appeared as counsel at two subsequent court dates. (*See* Dec. 5, 2022 Entry; Jan. 9, 2023 Entry.) Indeed, when this matter finally proceeded to trial on January 30, 2023, Mr. Williams was represented by two public defenders. Significantly, though, no

the trial court did not make any pre-trial rulings on the admissibility of the breathalyzer test evidence because it was never asked to do so. Nor was the trial court tasked with ruling on the admissibility of any evidence concerning the breathalyzer test since Mr. Williams's trial counsel did not object to Trooper Lee's testimony about it or the exhibits presented by the state to support that testimony. And, of note, Mr. Williams does not raise an ineffective assistance of counsel claim in either of his two assignments of error on appeal.

{¶ 16} Generally, appellate courts do not "consider an error which the complaining party 'could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997), quoting *State v. Williams*, 51 Ohio St.2d 112, 117 (1977). *See also State v. Awan*, 22 Ohio St.3d 120, 122 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus. Failure to object to the admission of evidence at trial waives all but plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22-23.

{¶ 17} Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an appellant's failure to timely raise those errors in the trial court. In such cases, the appellant bears the burden of demonstrating plain error on the record—i.e., the existence of a plain or obvious error that affected the outcome of the trial and resulted in a manifest miscarriage of justice. *See, e.g.*, *State v. West*, 168 Ohio St.3d 605, 2022-Ohio-1556, ¶ 3, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 22. To do this, an appellant must show " 'an error, i.e., a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings.' " *Rogers* at ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 18} However, even if the error is obvious, it must have affected the appellant's "substantial rights." Crim.R. 52(B). The Supreme Court of Ohio has " 'interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' " *Rogers* at ¶ 22, quoting *Barnes* at 27. As such, the appellant must demonstrate a reasonable probability that the error resulted in prejudice. *See id.*

---

suppression motions were filed after Mr. Williams entered his not guilty plea and the presiding trial court judge below was assigned to his case.

{¶ 19} In this case, Mr. Williams did not object to the admission of any evidence about the breathalyzer test at trial. As such, absent plain error, he has waived this issue for appeal. Yet, in his brief, Mr. Williams does not argue that the admission of the breathalyzer test rose to the level of plain error, involved his substantial rights, or affected the outcome of trial. (*See* Brief of Appellant at 7-9.) Instead, he contends that the trial court should have, sua sponte, excluded evidence of the breathalyzer test under Evid.R. 403 based on factual assertions about the adequacy of the state's evidence concerning the testing procedure and machine's calibration. (*See id.*)

{¶ 20} Thus, while Mr. Williams has only preserved plain error under Crim.R. 52(B), he does not argue the existence of plain error on appeal. "The burden of affirmatively demonstrating error on appeal rests with the party asserting error." (Citations omitted.) *Lundeen v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-629, 2013-Ohio-112, ¶ 16. *See* App.R. 16(A)(7); *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34. *See also Cook v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-852, 2015-Ohio-4966, ¶ 40, quoting *Bond v. Canal Winchester*, 10th Dist. No. 07AP-556, 2008-Ohio-945, ¶ 16 (" 'It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error.' "). Because Mr. Williams presents no plain error arguments on appeal, he has failed to meet that burden.

{¶ 21} However, even if Mr. Williams had presented plain error arguments in support of his first assignment of error, it is difficult to see how he would be able to demonstrate a reasonable probability that the admission of the breathalyzer test affected the outcome of trial. Indeed, he was found guilty of and sentenced for the impaired driving OVI offense which, unlike the per se OVI offense, could stand even on the evidence presented at trial without the breathalyzer test, as explained more fully below.

{¶ 22} Accordingly, because Mr. Williams has failed to argue—much less, demonstrate—plain error under Crim.R. 52(B), we overrule his first assignment of error.

### B. Second Assignment of Error

{¶ 23} In his second assignment of error, Mr. Williams contends that his OVI conviction is against the manifest weight of the evidence. The jury found Mr. Williams guilty of both the impaired driving and per se offenses charged. Mr. Williams was only sentenced for the impaired driving offense, as the per se count was merged for purposes of

sentencing. As such, we limit our analysis of his manifest weight challenge to the impaired driving OVI offense.[5] *See State v. McKinney*, 10th Dist. No. 08AP-23, 2008-Ohio-6522, ¶ 44. *See also State v. Kpoto*, 10th Dist. No. 19AP-492, 2020-Ohio-3866, ¶ 13, 16-21.

### 1. Standard of Review

{¶ 24} "[A] manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion." *State v. Harris*, 10th Dist. No. 21AP-678, 2023-Ohio-3994, ¶ 15, citing *State v. Richey*, 10th Dist. No. 17AP-260, 2018-Ohio-3498, ¶ 50, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11-13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-87 (1997). " '[W]eight of the evidence' concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Harris* at ¶ 15, citing *State v. Petty*, 10th Dist. No. 15AP-950, 2017-Ohio-1062, ¶ 60, citing *State v. Boone*, 10th Dist. No. 14AP-87, 2015-Ohio-2648, ¶ 49, citing *Thompkins* at 387.

{¶ 25} In reviewing whether a conviction runs counter to the manifest weight of the evidence, we sit as the "thirteenth juror" and may disagree "with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). *See also State v. Martin*, 170 Ohio St.3d 181, 2022-Ohio-4175, ¶ 26. "In making this determination, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Harris* at ¶ 16, citing *Sparre v. Ohio Dept. of Transp.*, 10th Dist. No. 12AP-381, 2013-Ohio-4153, ¶ 10; *Eastley* at ¶ 20; *Thompkins* at 387; *Martin* at ¶ 26.

{¶ 26} Although we review credibility when considering the manifest weight of the evidence, we must bear in mind that determinations regarding credibility of witnesses and the weight of testimony are primarily for the trier of fact. *Harris* at ¶ 17, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Morris v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-131, 2021-Ohio-3803, ¶ 64, citing *Watson v. Ohio*

---

[5] If we found Mr. Williams's impaired driving OVI conviction to be against the manifest weight of the evidence, however, we would also evaluate the evidence underlying the per se OVI offense. Such additional analysis is not necessary in this case, however.

*Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-606, 2012-Ohio-1017, ¶ 31, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).  This is because the trier of fact is best able "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc.* at 80.

{¶ 27}  " 'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  And, reversal of a jury verdict on manifest weight grounds requires unanimous concurrence of all three judges on the court of appeals panel reviewing the case.  *Harris* at ¶ 18, citing Article IV, Section 3(B)(3) of the Ohio Constitution; *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, ¶ 2-4, citing *Thompkins* at paragraph four of the syllabus.

### 2.  Application

{¶ 28}  Mr. Williams was convicted of OVI in violation of R.C. 4511.19(A)(1)(a).  That statute prohibits a person from operating a vehicle "if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.19(A)(1)(a).  "The essential element under this charge is whether, due to the consumption of alcohol, defendant's actions, reactions and mental processes were adversely affected and appreciably impaired." C*olumbus v. Clark*, 10th Dist. No. 91AP-780, 1991 Ohio App. LEXIS 6302, *5 (Dec. 24, 1991).  *See also State v. Cohen*, 1st Dist. No. C-220354, 2023-Ohio-1643, ¶ 10.

{¶ 29}  As the foundation for this appeal, Mr. Williams posits that the state failed to prove he was driving while impaired.  He also generally challenges the credibility of Trooper Lee's testimony about his administration and assessment of the standard field sobriety tests.[6]  Those arguments are not well-taken, as explained below.

---

[6] In his brief, Mr. Williams makes arguments in support of his second assignment of error that far exceed the scope of his manifest weight claim.  He asserts that his trial counsel "should have objected to all citations of NHTSA, particularly when Trooper Lee's testimony was inconsistent with the training manual" because that manual was not entered into the record and Trooper Lee "was not submitted as an expert on the subject." (Brief of Appellant at 15.)  However, Mr. Williams did not raise an ineffective assistance of counsel claim as a separate assignment of error on appeal.  Similarly, Mr. Williams also makes evidentiary contentions which, he states, are "related to the sufficiency of evidence in this case." (Brief of Appellant at 15.)  But Mr. Williams did not include a sufficiency challenge in his statement of his second assignment of error.  Because Mr. Williams failed to state and argue separately these matters in his brief, we decline to address Mr. Williams's

{¶ 30} Mr. Williams contends that the video footage from Trooper Lee's cruiser camera contradicts Trooper Lee's testimony about the "clear" weather conditions on the night in question. (Brief of Appellant at 13.) On review, we agree with Mr. Williams that the video footage shows some mild precipitation. But we do not find that the footage contradicts Trooper Lee's testimony in any meaningful way. Trooper Lee testified that he observed Mr. Williams's vehicle strike the concrete median, thus committing a marked lanes violation. (*See* Tr. Vol. II at 108-14.) Trooper Lee pulled Mr. Williams's vehicle over immediately thereafter. (Tr. Vol. II at 113; *see* Ex. A at 3:18.) The relevant events Trooper Lee described in his trial testimony are consistent with the cruiser footage, notwithstanding any slight precipitation.

{¶ 31} Indeed, Mr. Williams does not dispute that he drove his vehicle onto the concrete median. Rather, he suggests on appeal that his deficient driving can be attributed to the wet roadway and his vehicle's bald tires causing his vehicle to "slid[e] out[] and hit a pothole." (*See* Brief of Appellant at 14.) But he testified about these facts at trial (*see* Tr. Vol. II at 189), and the jury had the opportunity to consider them when it reached its verdict. Notably, too, Mr. Williams told Trooper Lee at the time he was stopped that he struck the concrete barrier because "he was on his cell phone." (Tr. Vol. II at 114.) And, on appeal, Mr. Williams does not argue that the weather conditions impacted his performance on the standard field sobriety tests.

{¶ 32} Mr. Williams also posits that "[i]f Trooper Lee was under the impression that Mr. Williams was driving recklessly and impaired," Trooper Lee should have pulled him over "immediately"—i.e., before Mr. Williams struck the median. (Brief of Appellant at 13-14.) That argument is not compelling. Trooper Lee did not testify that he pulled Mr. Williams over because he suspected impaired driving. Rather, Trooper Lee testified that he initially suspected Mr. Williams of speeding and initiated a traffic stop after he observed Mr. Williams's vehicle hit the concrete median. (*See* Tr. Vol. II at 108-14; Ex. A at 3:18.) Based on his observation of this marked lanes violation, Trooper Lee had probable cause to conduct a non-investigatory traffic stop. *See, e.g., State v. Oliver*, 10th Dist. No. 21AP-449, 2023-Ohio-1550, ¶ 43. During that stop, Trooper Lee noticed Mr. Williams had "bloodshot,

---

contentions about issues that have no bearing on our manifest weight analysis and are not properly before this court for review. *See* App.R. 12(A)(2); App.R. 16(A).

glassy eyes" and detected a "mild odor of alcohol" coming from the vehicle in which Mr. Williams was the sole occupant. (Tr. Vol. II at 114-15.) Thus, Trooper Lee did not suspect Mr. Williams of impaired driving until after he initiated the stop. (*See* Tr. Vol. II at 114-16.)

**{¶ 33}** Mr. Williams also emphasizes that he "drove for quite some time with no infractions" to argue the state failed to prove he was driving while impaired. (Brief of Appellant at 13.) However, as we have previously noted, "the observation of impaired driving is not necessarily a prerequisite to a conviction for OVI." (Citations omitted.) *State v. Koss*, 10th Dist. No. 13AP-970, 2014-Ohio-5042, ¶ 62. Indeed, Trooper Lee testified that, based on his training and experience with impaired drivers, it is possible for someone who is impaired to change lanes, use a turn signal, pull over, and exit their vehicle without issue. (*See* Tr. Vol. II at 177-78.)

**{¶ 34}** Regarding his bloodshot eyes, Mr. Williams points out that he "had a hereditary issue and high blood pressure that results in bloodshot eyes." (Brief of Appellant at 14.) Again, we note that because the jury heard about these facts from Mr. Williams at trial (*see* Tr. Vol. II at 188, 197), it had the opportunity to take them into consideration when reaching its verdict. In a similar vein, the jury heard Trooper Lee's testimony about his administration of and Mr. Williams's performance on the field sobriety tests, which were also depicted on the cruiser camera's video footage. Thus, the jury sat in the best position to consider and evaluate the credibility of this evidence at trial. *See Seasons Coal Co., Inc.*, 10 Ohio St.3d at 80.

**{¶ 35}** Mr. Williams also maintains that Trooper Lee's testimony about the NHTSA manual was incorrect. (*See* Brief of Appellant at 14-17.) Yet, as Mr. Williams recognizes, the NHTSA manual was never introduced as evidence at trial, and his trial counsel did not argue that Trooper Lee's testimony was inconsistent with it. (Brief of Appellant at 15.) "It is a fundamental principle that an appellate court is constrained to review only those matters contained in the record." *Cincinnati Ins. Co. v. DTJ Ents. (In re Hoyle)*, 143 Ohio St.3d 197, 2015-Ohio-843, ¶ 33, citing *Brown v. Cleveland*, 66 Ohio St.2d 93, 98 (1981). Because the NHTSA manual is not contained in the record before us, our ability to evaluate Mr. Williams's arguments about it is severely limited. But, even if it was, Mr. Williams fails to explain why we should find that Trooper Lee's purportedly erroneous or speculative testimony about "statistics" from the NHTSA manual is relevant to our analysis of his

manifest weight challenge.  He also does not explain the import of Trooper Lee's purported failure to "note that he considered the weight standard while performing the field sobriety tests." (*See* Brief of Appellant at 15, citing Tr. Vol. II at 174.)  As such, we cannot see how either affects the weight of the evidence on which his impaired driving conviction was based.

{¶ 36} We also note that on the cruiser camera footage shown to the jury, Mr. Williams admitted to consuming "two Southern Comfort drinks" earlier that night.  (*See* Tr. Vol. II at 142-43.)  During trial, Mr. Williams testified that he drank "two little bottles" of Southern Comfort on the evening he was stopped. (*See* Tr. Vol. II at 190-91.)  And, while not required for a conviction of impaired driving under R.C. 4511.19(A)(1)(a), we also note that, approximately 1 hour and 7 minutes after the stop, Mr. Williams submitted to a breathalyzer test and registered a breath alcohol concentration  level of 0.125, which far exceeds the 0.08 legal limit for driving.  (*See* Tr. Vol. II at 147, 156-57; Ex. B; Ex. D.)

{¶ 37} After viewing the cruiser footage and hearing the testimony of Trooper Lee and Mr. Williams, the jury sat in the best position to evaluate the credibility of the two witnesses.  And we must generally give deference to the jury's credibility determinations.  Based on the foregoing and after considering all the evidence presented at trial, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that Mr. Williams's impaired driving conviction must be reversed and a new trial ordered.

{¶ 38} Accordingly, his second assignment of error is overruled.

### III.  CONCLUSION

{¶ 39} Having overruled Mr. Williams's two assignments of error, we affirm the February 3, 2023 judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BEATTY BLUNT and JAMISON, JJ., concur.

———————————————