[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Martin*, Slip Opinion No. 2022-Ohio-4175.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4175

THE STATE OF OHIO, APPELLEE, *v.* MARTIN, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Martin*, Slip Opinion No. 2022-Ohio-4175.]

*Juvenile court—Transfer to adult court—A juvenile court's probable-cause determination at a mandatory-bindover hearing is not subject to manifest-weight review on appeal—Court of appeals' judgment affirmed.*

(No. 2021-0967—Submitted June 15, 2022—Decided November 29, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 108996, 2021-Ohio-1096.

_____

**DEWINE, J.**

{¶ 1} Under certain circumstances, a juvenile case may be transferred to adult court for criminal prosecution.  One prerequisite to a transfer is that the state must establish probable cause to believe that the juvenile committed the charged offense.  This case is about the proper standard for reviewing a juvenile court's probable-cause determination.

**{¶ 2}** The juvenile in this case proposes that an appellate court must assess whether the "manifest weight of the evidence" supports the finding of probable cause. The "manifest weight" standard is one that we have employed in the context of reviewing a factfinder's finding of guilt: we reverse a criminal conviction when it is not supported by the manifest weight of the evidence. But manifest-weight review—which requires a weighing of all the evidence—is a different inquiry from whether there is probable cause to believe that a crime has been committed.

**{¶ 3}** The court of appeals below appropriately concluded that a determination of probable cause in a bindover proceeding is not subject to manifest-weight review. We affirm its judgment.

## I. Background

**{¶ 4}** The events in this case began with a fight among teenage girls. They ended in the death of 20-year-old Darnez Canion.

**{¶ 5}** Fifteen-year-old M.G. was hanging out with some friends at a park near her home when a fight broke out between her group and another group of girls. M.G. went home after the fight. But when she got there, she realized her necklace was missing. Two male friends of M.G.'s, Tysean Martin and Damien Stewart, offered to go to the park to look for her necklace. As they were leaving, Stewart got a call from one of the girls who had fought M.G. and her friends, threatening that he was going to get "touched." According to M.G., Martin was carrying a black gun in his bookbag when he left for the park.

**{¶ 6}** Another friend of M.G.'s ran into Stewart and Martin on their way to the park and joined them in their quest. The friend made a video call to M.G. through his cell phone's FaceTime application, to keep her abreast of the search. During this call, M.G. was able to view some of what happened next.

**{¶ 7}** As M.G. described it, a group of people spotted Stewart in a school parking lot on his way to the park. Canion, the victim in this case, was among them. Canion punched Stewart, the two started fighting, and others quickly joined in. A

girl passed Canion a gun, but when he went to fire, Stewart knocked the gun out of his hand. An unknown person grabbed that gun, Martin drew his, and they began firing at each other. M.G. saw "shots coming from both sides." She figured that Martin got "a few" shots off before his gun jammed and everyone started running. During cross-examination at the probable-cause hearing, however, M.G. conceded that she couldn't be sure that Martin's gun fired before jamming. At some point after the shooting started, M.G.'s friend dropped his phone and the call ended.

{¶ 8} When police arrived on scene, they found Canion lying on the ground with a gunshot wound. He died soon thereafter. Three different types of shell casings were found in the parking lot, leading the state to argue that there had been at least three shooters.

{¶ 9} Police also reviewed video footage from the school's security cameras. One camera showed a group of 15 to 20 people at the scene of the fight. Canion and Stewart were fighting, with Martin standing behind them wearing a bookbag. As things escalated, Martin ran to an area out of the camera's view. Gunshots were fired from that area, and shell casings were later found in the same spot. A different camera showed a closeup of five people, including Stewart and Martin, then running around the side of the school away from the scuffle; Martin had a gun in his hand.

{¶ 10} The state filed a complaint in the juvenile court alleging that Martin committed involuntary manslaughter, among other offenses. Under Ohio's statutory scheme, when a 16- or 17-year-old is accused of committing involuntary manslaughter with a gun, the juvenile court is required to transfer the case to the general division of the court of common pleas—but only if it first finds probable cause to believe that the juvenile committed the offense. *See* R.C. 2152.10(A)(2), 2152.02(BB)(2), and 2152.12(A)(1)(b)(i). This process is known as a "mandatory bindover."

{¶ 11} The juvenile court held a hearing, determined that the state had

established probable cause, and transferred Martin's case to the general division. A grand jury indicted Martin, and he ultimately pleaded guilty to involuntary manslaughter, having weapons while under a disability, and aggravated riot.[1]

{¶ 12} Martin appealed to the Eighth District Court of Appeals. He asserted, among other things, that the state had not presented sufficient evidence to establish probable cause and that the juvenile court's finding of probable cause was against the manifest weight of the evidence. He therefore contended that the juvenile court erred in transferring his case to the general division.

{¶ 13} The Eighth District affirmed Martin's convictions. The court of appeals determined that the state had presented evidence sufficient to establish probable cause. 2021-Ohio-1096, ¶ 23, 36. It further concluded that the juvenile court's probable-cause determination was not subject to a manifest-weight challenge. *Id*. at ¶ 21-22.

{¶ 14} We accepted Martin's appeal to address the question whether a juvenile court's probable-cause determination is subject to a manifest-weight challenge on appeal. *See* 165 Ohio St.3d 1449, 2021-Ohio-3908, 175 N.E.3d 1285. We conclude that it is not.

## II. Analysis

### A. *Probable cause in the juvenile-bindover context*

{¶ 15} Before transferring a juvenile case to adult court, the juvenile court must first find probable cause. R.C. 2152.12(A)(1)(a), (A)(1)(b), and (B)(2); Juv.R. 30(A) ("the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged"). In this respect, the juvenile court is tasked with evaluating " 'whether sufficient credible evidence

---

1. This court has accepted an appeal raising the question whether a juvenile whose case is bound over to the general division of a common pleas court and who subsequently pleads guilty waives his ability to contest the juvenile court's finding of probable cause. *See State v. Zarlengo*, 166 Ohio St.3d 1483, 2022-Ohio-1284, 186 N.E.3d 817. The state has not argued that Martin waived his probable-cause challenge by pleading guilty, and we express no opinion on that question here.

exists to warrant going forward with a prosecution on a charge that the legislature has determined triggers a mandatory transfer of jurisdiction to adult court.' " *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 46, quoting *In re A.J.S.,* 173 Ohio App.3d 171, 2007-Ohio-3216, 877 N.E.2d 997, ¶ 22 (10th Dist.). Once the state has established probable cause to believe that a juvenile has committed an offense that is subject to mandatory bindover, the juvenile court has no choice but to relinquish jurisdiction over the case. *See* R.C. 2152.12(A); Juv.R. 30(B).

{¶ 16} Probable cause is a familiar concept in the law. As the name suggests, probable cause "deals with probabilities." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), citing *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). It " 'is a fluid concept—turning on the assessment of probabilities in particular factual contexts.' " *Id*. at 370-371, quoting *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 17} " '[T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt * * *.' " *Id.* at 371, quoting *Brinegar* at 175. Thus, probable cause exists when the facts and circumstances are sufficient to provide a reasonable belief that the accused has committed a crime. *Brinegar* at 175-176, citing *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The inquiry requires the judge to review all the circumstances and make "a practical, common-sense decision" as to whether probable cause is present. *Gates* at 238.

{¶ 18} It is said that probable cause is "incapable of precise definition or quantification into percentages." *Pringle* at 371. Thus, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence * * * have no place in the probable-cause decision." (Cleaned up.) *Id*. But probable cause requires "more than bare suspicion." *Brinegar* at 175. The

circumstances must demonstrate a "fair probability" that a crime has been committed. *Gates* at 238.

{¶ 19} This court has previously discussed the probable-cause standard in the context of juvenile-bindover proceedings. We have explained that before a juvenile court may relinquish jurisdiction of a delinquency case, "[t]he state must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense." *State v. Iacona*, 93 Ohio St.3d 83, 752 N.E.2d 937 (2001), paragraph three of the syllabus. "[T]he state must produce evidence that raises more than a mere suspicion of guilt, but [it] need not provide evidence proving guilt beyond a reasonable doubt." *Id*. at 93.

{¶ 20} In *Iacona*, this court considered defense expert testimony contradicting the coroner's claim that the victim's death was a homicide and suggesting instead that the victim had died of natural causes. We rejected the notion that the defense evidence had undermined the juvenile court's finding of probable cause. We explained that notwithstanding evidence challenging the state's theory of the case, the state had nevertheless presented evidence that "was credible, even if not unassailable." *Id*. at 96. Though we acknowledged that the juvenile court "must evaluate the quality of the evidence presented by the state in support of probable cause," *id*. at 93, we emphasized that deciding the merits of competing prosecution and defense theories was "a matter for a factfinder at trial," *id*. at 96.

{¶ 21} We elaborated on the probable-cause standard in *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, another juvenile-bindover case. There, the state presented evidence that the juvenile had committed attempted murder by shooting a gun at other people. The juvenile court concluded that the state had not established probable cause, because it was possible that the juvenile had fired his weapon toward the ground rather than at the alleged victims. The court of appeals reversed the juvenile court's judgment, and we affirmed.

{¶ 22} In doing so, we explained that while "the state must present credible evidence of every element of an offense to support a finding of probable cause," *id.* at ¶ 46, probable cause requires only that the state's evidence raise "more than a mere suspicion of guilt," *id*. at ¶ 62, citing *Iacona*, 93 Ohio St.3d at 93, 752 N.E.2d 937. And we emphasized that "the state has no burden to disprove alternate theories of the case at a bindover proceeding." *Id*. at ¶ 61.

{¶ 23} This court further recognized in *A.J.S.* that a judge presiding over a probable-cause hearing has "a duty to assess the credibility of the evidence and to determine whether the state has presented credible evidence going to each element of the charged offense." *Id.* at ¶ 44. And we concluded that these credibility assessments were entitled to deference on review. *Id*. at ¶ 51. But we made clear that the juvenile court "is not permitted to exceed the limited scope of the bindover hearing or to assume the role of the ultimate fact-finder." *Id*. at ¶ 44. Rather, it is tasked only with determining whether the state presented sufficient credible evidence of probable cause, and that determination is reviewed de novo.

{¶ 24} Applying those principles to the facts in *A.J.S.*, we held that although "some of the evidence could support a determination that A.J.S. fired his gun at the ground to scare the victims, * * * the state met its burden to establish probable cause by presenting evidence raising more than a mere suspicion that A.J.S. purposely attempted to cause the death of the victims." 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 64. And we reiterated that resolution of those conflicting theories was "a matter for the trier of fact at a trial on the merits of the case." *Id*.

B. *Probable-cause determinations are not subject to manifest-weight challenges*

{¶ 25} Martin contends that our statements in *Iacona* and *A.J.S.* directing the juvenile court to evaluate the credibility and quality of the state's evidence of probable cause demonstrate that the state's showing is subject to a manifest-weight challenge. But the two concepts are distinct.

{¶ 26} The term " 'manifest weight of the evidence' * * * relates to

persuasion." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. It "concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). When conducting a manifest-weight review, the appellate court " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). We have thus described the appellate court's role in manifest-weight review as that of a " 'thirteenth juror' " who may disagree with the factfinder's resolution of the conflicting evidence. *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶ 27} Our references to credibility in *Iacona* and *A.J.S.* were directed not at the ultimate resolution of competing evidence but, rather, to the reliability of the evidence presented in support of probable cause. Probable cause "is dependent upon both the content of the information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *see also Brinegar*, 338 U.S. at 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (the facts supporting probable cause must be based on "reasonably trustworthy information"). Both the quantity and quality of the evidence must be considered. *White* at 330.

{¶ 28} Martin insists that the juvenile court's "entire function" at a bindover hearing "is to weigh the evidence and evaluate it for credibility." But that is the opposite of what this court has said. Indeed, we held in *A.J.S.* that the juvenile court had "exceeded the scope of its review of the evidence when it weighed the conflicting evidence." 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 60.

{¶ 29} Martin's arguments about the evidence presented at the probable-cause hearing in this case are illustrative. He primarily attacks the state's evidence showing that his gun was operable. The state relied on M.G.'s statement that she had seen Martin fire his gun through the FaceTime call, as well as on video footage of Martin running to a place where shell casings were later found and fleeing the scene with a gun in his hand. Martin points out that although M.G. initially said she had seen him fire a gun, she later said she could not be certain that he had done so. And he contends that it is possible that some other person not shown in the video fired shots from the location where Martin was positioned. What he presents is, in essence, an alternate theory of the case. This is the type of argument a trier of fact would consider in deciding whether to convict or acquit after a trial.

{¶ 30} And therein lies the problem. Not only is it improper to conduct a manifest-weight review of the evidence presented during the probable-cause portion of a juvenile-bindover hearing—it is not possible to. The state has no obligation to marshal all of its evidence at the probable-cause phase so as to survive a manifest-weight challenge. It need only present "sufficient credible evidence" to establish probable cause. *Id.* at ¶ 65. Because neither party is compelled to present the entirety of its evidence at the probable-cause hearing, it is difficult to see how an appellate court could review whether "the greater amount" of credible evidence at the probable-cause hearing favors the state or the accused juvenile (emphasis deleted), *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 31} The juvenile court presiding over a probable-cause hearing does not sit as the ultimate trier of fact. Rather, "the juvenile court's role in a mandatory-bindover proceeding is that of a gatekeeper." *A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 46. It is tasked only with conducting a preliminary hearing to determine whether the state has presented sufficient credible evidence to proceed with its prosecution in a criminal court. Juv.R. 30(A). Questions regarding the greater weight of the evidence must be reserved for final adjudication on the

merits.

### III. Conclusion

{¶ 32} A juvenile court's probable-cause determination at a mandatory-bindover hearing is not subject to manifest-weight review on appeal. We affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Ochocki, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Timothy B. Hackett, Assistant Public Defender, for appellant.

Dave Yost, Ohio Attorney General, Benjamin M. Flowers, Solicitor General, and Samuel C. Peterson, Deputy Solicitor General, urging affirmance for amicus curiae, Ohio Attorney General Dave Yost.

_____