[Cite as *State v. Ferguson*, 2024-Ohio-576.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                            No. 112650

    v.                                     :

KEVIN FERGUSON,                          :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 15, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-651219-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Benjamin Fuchs and Chauncey Keller, Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Rick Ferrara, Assistant Public Defender, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Kevin Ferguson ("Ferguson") appeals from his conviction for gross sexual imposition. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} This case stems from events that allegedly occurred on May 17 and 18, 2020. On May 17, 2020, victim A.W. and her then-boyfriend, Trabor Perry ("Perry") went to Ferguson's apartment in Cleveland, Ohio. A.W. testified that Perry and Ferguson are cousins and she had known Ferguson for approximately a year prior to May 2020. A.W. testified that a group of people had gathered at Ferguson's apartment to drink and smoke marijuana.

{¶ 3} A.W. testified that at a certain point, because it was so late and because she and Perry had been drinking and smoking marijuana, they decided to spend the night at Ferguson's apartment. A.W. denied being intoxicated, testifying that she did not drink very much. She and Perry spent the night on the living room floor; they were sleeping "on one cover and under another cover"; by the time they fell asleep, everyone else but Ferguson had left the apartment. According to A.W., Ferguson went to sleep in his bedroom.

{¶ 4} A.W. testified that she woke up on the morning of May 18, 2020, to find Ferguson's hand between her legs and up her dress, touching her vagina. A.W. testified that she felt Ferguson's fingers in her vagina and it woke her up and scared her and she jumped up. Ferguson then went back to his bedroom, and A.W. woke Perry up, who was sleeping beside her while this occurred. Perry then went to Ferguson's bedroom and confronted him, and A.W. said that she was going to call

the police.  A.W. testified that Ferguson said that he was "trying to put a cover on her."

{¶ 5} A.W. testified that Perry tried to talk her out of calling the police, but she ultimately dialed 911; the state played the audio recording of A.W.'s 911 call at trial.  A.W. left the apartment and went downstairs, where she spoke with the responding police officers.  According to A.W., Perry also left the apartment and went outside to speak to the police.  A.W. testified that after speaking to the police, they drove her home; Perry did not leave with her, and she was unsure where he went or when he left Ferguson's apartment.  A.W. testified that she did not go to the hospital because no one suggested that she should, and she was just "trying to separate [herself] from the situation."

{¶ 6} A.W. identified Ferguson at trial.

{¶ 7} A.W.'s daughter, E.H., testified that on May 18, 2020, she was living at her aunt's house in Brookpark, Ohio, with her aunt and A.W.  E.H. testified that her mother was dropped off at her aunt's house by police that morning.  E.H. went on to testify that A.W. was "not in a good state" when she was dropped off; specifically, A.W. was "more sad, [and] distraught" and E.H. did not know what had happened, but she could tell that something had happened.

{¶ 8} Cleveland police officer Lucas Nezbeth ("Nezbeth") testified that on May 18, 2020, in the early morning hours, he responded to a call for "unknown trouble" at an apartment complex in Cleveland.  Nezbeth testified that he met A.W. and Perry outside of the apartment building, and A.W. appeared very frantic and

visibly upset. Nezbeth testified that initially, he spoke with Perry and his partner spoke with A.W., but he ultimately spoke with A.W. and learned that A.W. woke up to her boyfriend's cousin "touching her inappropriately in her vaginal region." Nezbeth testified that because the apartment building was secured and he did not have ready access to the building, and because of how frantic and scared A.W. was, he did not make any attempt to speak with Ferguson. Instead, Nezbeth contacted his supervisor to explain the situation and obtain permission to drive A.W. home.

{¶ 9} The stated introduced Nezbeth's body-camera footage from his encounter with A.W. and Perry.

{¶ 10} Finally, Detective William Chapman ("Chapman"), a detective with the Cuyahoga Metropolitan Housing Authority police, testified that he was assigned this case, reviewed the report prepared by Nezbeth's partner, and reached out to A.W. Chapman spoke to A.W. on the phone to set up an interview at her aunt's house on May 21, 2020.

{¶ 11} Chapman testified that A.W. explained the events of May 17 and 18 as described above. A.W. told Chapman that while she was sleeping, she felt someone touching her legs and vagina and she woke up and found Ferguson standing over her and he "played like he was putting the blanket over her" before going back to his bedroom. Chapman testified that because his interview with A.W. took place three days after the incident, he did not collect any DNA samples.

{¶ 12} On August 3, 2020, a Cuyahoga County Grand Jury indicted Ferguson on Count 1, gross sexual imposition in violation of R.C. 2907.05(A)(5) and

Count 2, gross sexual imposition in violation of R.C. 2907.05(A)(1), both felonies of the fourth degree, as a result of the incident on May 18, 2020.

{¶ 13} Ferguson pleaded not guilty to the indictment, and the case proceeded to a jury trial on March 1, 2023. The jury returned a verdict of guilty on Count 1 and not guilty on Count 2. The court referred Ferguson to the probation department for a presentence investigation.

{¶ 14} The court held a sentencing hearing on March 30, 2023. The court sentenced Ferguson to 18 months in prison and determined that he was a Tier I sex offender.

{¶ 15} Ferguson filed a timely notice of appeal and presents two assignments of error for our review:

> I. The trial court committed plain error in informing the petit jury that the evidence shows more likely than not that a crime occurred and defendant is somehow responsible, violating appellant's right to due process under the Ohio and United States Constitutions.

> II. The manifest weight of the evidence did not support conviction.

**Law and Analysis**

**I. Statement to Jury**

{¶ 16} In his first assignment of error, Ferguson argues that the trial court committed plain error when it informed the jury that the evidence shows more likely than not that a crime occurred and Ferguson is somehow responsible, therefore violating Ferguson's constitutional due process rights. Specifically, Ferguson argues that the trial court made multiple statements during voir dire misstating the relevant

burden of proof for grand jury proceedings. This, according to Ferguson, prejudiced him and negated the presumption of innocence.

{¶ 17} As an initial matter, we note that Ferguson did not object to these allegedly prejudicial statements at trial. A failure to object waives all but plain error. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 120, citing *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 204. Crim.R. 52(B) provides that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. ""'Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.'"" *Id.*, quoting *State v. Adamson*, 72 Ohio St.3d 431, 434-435, 650 N.E.2d 875 (1995), quoting *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶ 18} When evaluating whether a trial court erred in instructing the jury during voir dire, we review the jury instructions as a whole. *State v. Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, ¶ 55, citing *State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 36, citing *State v. Van Gundy*, 64 Ohio St.3d 230, 233-234, 594 N.E.2d 504 (1992).

{¶ 19} Reviewing the jury instructions and the court's statements to the jury in their entirety, we cannot say that the trial court's misstatement of the burden of proof required for a grand jury to indict was prejudicial, such that a manifest miscarriage of justice occurred.

{¶ 20} The statements at issue took place when the trial court, upon learning that a prospective juror had previously served on a grand jury, engaged that prospective juror in a discussion about the differences between grand jury proceedings and trial proceedings. Specifically, the trial court described the burden of proof in grand jury proceedings, relative to trial, as follows:

> THE COURT: So the burden of proof is lower. The burden of proof is more likely than not. It's probable cause. Has the evidence shown more likely than not a crime occurred and this person is somehow responsible.
>
> You are going to be judging this case following the law and the burden of proof you are going to follow is beyond a reasonable doubt. It's a much higher burden. And so does that probable cause burden ring a bell with you, [Juror 8]?
>
> JUROR NO. 8: It does.
>
> THE COURT: So you understand that's not the burden if you are chosen as a juror in this case. You are going to apply what I explain to you as beyond a reasonable doubt.
>
> JUROR NO. 8: Yes. I understand.

{¶ 21} While the trial court made a point to distinguish between the respective burdens of proof, we note that the trial court's description of the probable cause standard applicable to grand jury proceedings was an incorrect statement of law. It is incorrect that an individual's indictment by a grand jury means it is "likely" or "more likely than not" that they have committed a crime. Instead, a grand jury indictment creates a presumption of probable cause. *State v. Lucas*, 8th Dist. Cuyahoga No. 108436, 2021-Ohio-437, ¶ 24, citing *State v. Thomas*, 8th Dist. Cuyahoga No. 104174, 2017-Ohio-957. The probable-cause standard is incapable of

precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). Probable cause requires "more than a bare suspicion" and the circumstances must demonstrate a "fair probability" that a crime has been committed. *State v. Martin*, 170 Ohio St.3d 181, 2022-Ohio-4175, 209 N.E.3d 688, ¶ 18.

{¶ 22} It is certainly not a best practice for a trial court to provide incorrect statements of law to jurors, whether during voir dire or otherwise, let alone to repeat those incorrect statements. The incorrect statements, however, took place in a very specific context — a discussion with a prospective juror about their previous experience on a grand jury, and the distinctions between grand jury proceedings and trial proceedings — and they were subsequently corrected when the trial court provided clear instructions to the jury as to the relevant burden of proof at trial.

{¶ 23} More importantly for our analysis of whether the trial court's statements prejudiced Ferguson and created a manifest miscarriage of justice, we note that when referring to the applicable burden of proof for the jury at trial — beyond a reasonable doubt — the trial court repeatedly provided accurate explanations of the beyond a reasonable doubt standard. Specifically, the court stated:

> The burden of proof. The defendant is presumed innocent until his guilt is established beyond a reasonable doubt. The defendant must be acquitted of an offense unless the state produces evidence that convinces you beyond a reasonable doubt of every essential element of such offense as charged in the indictment.

Reasonable doubt is * * * present when, after you have carefully considered and compared all of the evidence you cannot say you are firmly convinced of the truth of the charge. Reasonable doubt is a doubt based on reason and common sense. Reasonable doubt is not here possible doubt because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. Proof beyond a reasonable doubt is such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs.

{¶ 24} Further, the court repeatedly stated that Ferguson was presumed innocent, and specifically questioned the prospective jurors as to whether or not they understood and could apply the presumption of innocence at trial.

{¶ 25} Ohio courts have repeatedly held that a trial court's statements during voir dire, similar to those at issue in this case, do not violate a defendant's due process rights. In *State v. Brown*, the Twelfth District found that a trial court's statements that the grand jury process is "a procedural safeguard to make certain that innocent people aren't drug into the courtrooms and required to" stand trial was not an error where the trial court repeatedly reiterated the presumption of innocence and the state's burden to prove the defendant's guilt at trial beyond a reasonable doubt. *State v. Brown*, 12th Dist. Butler No. CA2011-11-207, 2013-Ohio-1610, ¶ 44. Likewise, this court found that a trial court's statements — mirroring those in this case — that a grand jury returns an indictment when it finds "probable cause to believe that appears more likely than not that the person did commit the crime" did not have a materially adverse effect on the proceedings or prejudice the defendant where the court subsequently correctly stated the appropriate burden of

proof at trial. *State v. McLoyd*, 8th Dist. Cuyahoga No. 112092, 2023-Ohio-4306, ¶ 22.

{¶ 26} Based on the foregoing, we cannot conclude that the trial court's statements here amounted to plain error. Therefore, Ferguson's first assignment of error is overruled.

## II. Manifest Weight

{¶ 27} In Ferguson's second assignment of error, he argues that his gross sexual imposition conviction was against the manifest weight of the evidence because it rested entirely on A.W.'s testimony. According to Ferguson, A.W.'s testimony was inconsistent.

{¶ 28} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. "'[W]eight of the evidence involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). On a manifest weight challenge, "a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d

717 (1st Dist.1983), paragraph three of the syllabus. Reversal of a trial court's "judgment on manifest weight of the evidence requires the unanimous concurrence of all three appellate judges." *State v. Crumbley*, 8th Dist. Cuyahoga No. 93202, 2010-Ohio-3866, ¶ 20, citing *Thompkins* at paragraph four of the syllabus.

{¶ 29} A defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness' testimony are inconsistent or contradictory. *State v. Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 40, citing *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.), and *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38. "'"While [a factfinder] may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."'" *Id.*, quoting *State v. Mann*, 10th Dist. Franklin No. 10AP-1131, 2011-Ohio-5286, ¶ 37, quoting *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, 7 (May 28, 1996).

{¶ 30} Here, Ferguson argues that A.W.'s testimony was inconsistent with respect to whether the blanket was on or off her, and where exactly Ferguson was when A.W. woke up. Our review of the record reveals that these alleged inconsistencies are perhaps more accurately characterized as responses to different questions on direct and cross-examination than actual inconsistencies in A.W.'s story. Moreover, neither of these alleged inconsistencies relates to the essential elements of gross sexual imposition. We cannot conclude that such minor

discrepancies in a witness' testimony were such that the jury lost its way in convicting Ferguson. Ferguson's conviction was not against the manifest weight of the evidence. Therefore, his second assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
LISA B. FORBES, J., CONCUR