[Cite as *State v. Jones*, 2024-Ohio-1987.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                         No. 113266

    v.                               :

ANTWAIN JONES, SR.,                     :

    Defendant-Appellant.             :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 23, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-680202-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph Lucchesi, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Thomas T. Lampman, Assistant Public Defender, *for appellant*.

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Antwain Jones, Sr. ("Jones"), appeals his convictions for two counts of aggravated robbery and the accompanying one- and three-year firearm specifications. Jones argues that he was deprived of an impartial

jury due to an incorrect statement made by the trial court during voir dire and that there was insufficient evidence that the gun used in the robbery was operable, thus, his convictions should be overturned. For the reasons set forth below, we affirm Jones's convictions.

## I. Facts and Procedural History

{¶ 2} On April 7, 2023, a robbery occurred at a Subway restaurant in Cleveland, Ohio at Shaker Square, which was captured on the store's surveillance cameras. During this incident Neel Mistry ("Mistry) and Hiya Patel ("Patel") were the only people working. At approximately 8:00 p.m., an individual, later identified as Jones, entered the Subway, and ordered a sandwich. Jones waited until the remaining customer left the store, then pulled a handgun out of his pocket, and pointed it at Patel and repeatedly demanded, "Give me all the money." (Tr. 248.) Patel attempted to open the register as quickly as possible while the gun was pointed at her and Mistry. Patel testified that she said, "Give me a second, please, give me one second, please." (Tr. 269.) In the video, Patel can be seen attempting to open the register three times while Jones leans over the counter pointing the gun at her. (State's exhibit No. 1.) Jones asked, "Who wants to go first?" because the register did not open fast enough. (Tr. 248, 269.) Surveillance footage from two angles was played for the jury. (State's exhibit Nos. 1 and 20.)

{¶ 3} Patel and Mistry gave Jones all the cash in the register, which totaled approximately $320. Jones put the cash in his pocket and walked backwards out of the store continuing to point the gun at Mistry and Patel. After Jones left, Mistry

and Patel locked the store and called Shaker Heights security who then called Cleveland police.

{¶ 4} Mistry described the robber as wearing a winter jacket, hat, and multicolored mask on his face. Mistry testified that the gun looked like a 9 mm and that Jones had his finger on the "clutcher" (trigger) and that he "was ready to shoot if we do not give the money." (Tr. 217.) He identified state's exhibit No. 16 as the hat Jones was wearing. Mistry testified that he felt unstable and afraid during and after the incident.

{¶ 5} Patel testified that the robber was wearing a dark hat, a dark jacket, and a multicolored cloth mask that covered his face so that only his eyes were visible, at the time of the robbery. Patel testified that the robber pulled the gun out of his pocket and "unlocked" it. (Tr. 250.) She thought it was a 9 mm. Patel testified that during the robbery she was thinking, "Oh, my God, I'm done. * * * Like I was thinking, like, that [it] was my last day — because he had the gun, so I don't know about that, but — quite horrified, me and my brother." (Tr. 256.) She testified that she was in fear for her life. Patel described the robber as being "middle fat" and around five feet and five inches tall. (Tr. 272.) She also identified state's exhibit No. 16 as the hat Jones was wearing.

{¶ 6} Cleveland Police Detective Demetrius Madison ("Det. Madison") testified that he works in the Violent Crime Unit and that he responded to the Subway after learning about the incident over the police radio. Upon his arrival, he received a general description of the suspect from the responding officers and

viewed surveillance footage from inside the Subway and then from the RTA station across the street.

{¶ 7} Det. Madison testified that the RTA footage, which was played for the jury, shows a "white Ford Escape with heavy front-end damage to the front driver's side of the vehicle" parked between a brick building and a bus stop a few minutes before 8:00 p.m. (Tr. 281-281.) Madison testified that the video shows someone exiting the vehicle and walking towards the Subway. (State's exhibit No. 2.) The person in this video is wearing the same clothing as the person robbing the Subway. (State's exhibit Nos. 1 and 2.) Then a few minutes after 8:00 p.m., that same person is seen running to the vehicle, getting in, and then driving away.

{¶ 8} At approximately 10:00 p.m., Cleveland police located the vehicle, in the area, at a liquor store at East 124 and Union. Officers stopped the vehicle and discovered Jones and a female passenger inside. Jones was arrested because he matched the description of the robbery suspect and was driving the vehicle seen fleeing the area minutes after the robbery. In addition, the hat that the suspect was described as wearing was found in the back of Jones's vehicle.

{¶ 9} Det. Madison's body camera footage of Jones's arrest was played for the jury. Upon reviewing the body camera and surveillance footage in court, Det. Madison testified that the man in the surveillance footage and the man on his body camera footage were wearing the same black hoodie with the same logo located on the left chest. (Tr. 290.) Det. Madison testified that during his investigation he learned that the female passenger was with Jones earlier in the day, then he dropped

her off for about an hour surrounding the time of the robbery, and then he picked her up again before the traffic stop. Det. Madison testified that Jones admitted that the white Ford Escape was his vehicle.

{¶ 10} The state rested and the defense moved for an acquittal pursuant to Crim.R. 29, which was denied. Jones was found guilty of two counts of aggravated robbery with the accompanying one- and three-year firearm specifications. He was sentenced to a total of 9 to 10 ½ years[1] in prison. Jones appeals, raising the following assignments of error for review:

> **Assignment of Error I:** The trial court's statement during voir dire that a grand jury concludes "there's probably [a] case here, and the Defendant probably did it" deprived Jones of an impartial jury. (Tr. 85.)

> **Assignment of Error II:** The trial court incorrectly denied Jones' motion for acquittal on the firearm specifications because there was insufficient evidence to convince the jury beyond a reasonable doubt that the alleged robbery involved an operational firearm. (Tr. 330, 334.)

## II. Law and Analysis

### A. Jones was Not Prejudiced by the Trial Court's Incorrect Statement Regarding Probable Cause

{¶ 11} In the first assignment of error, Jones argues that the trial court committed plain error when it attempted to describe the function of the grand jury to prospective members of the petit jury. Specifically, Jones complains that the trial

---

[1] Pursuant to R.C. 2929.14(B)(1)(g), the two three-year firearm specifications are to be served prior to and consecutive to the 3 to 4 ½ years on the underlying aggravated robbery counts, which were ordered to be served concurrently, for a total of 9 to 10 ½ years in prison.

court incorrectly stated that the grand jury decides if "there's probably a case here, and if the Defendant probably did it." (Tr. 85.) Jones maintains that "probable cause" and "probably" do not have the same meaning and the court "elevated" the grand jury's decision to issue an indictment above the mere suspicion of guilt, thereby negating the presumption of innocence and causing him prejudice. We find Jones's arguments unpersuasive.

{¶ 12} We note that Jones did not object to the trial court's comments, and thus, has waived all but plain error. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 120, citing *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 204. Crim.R. 52(B) provides that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. "Plain error occurs when, but for the error, the outcome of the trial clearly would have been otherwise." *State v. McLoyd*, 2023-Ohio-3971, 227 N.E.3d 493, ¶ 29 (8th Dist.), quoting *State v. Allen,* 73 Ohio St.3d 626, 635, 653 N.E.2d 675 (1995), citing *State v. Long*, 53 Ohio St.2d 91, 96-97, 372 N.E.2d 804 (1978).

{¶ 13} When evaluating whether a trial court erred in instructing the jury during voir dire, we review the jury instructions as a whole. *State v. Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, ¶ 55, citing *State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 36, citing *State v. Van Gundy*, 64 Ohio St.3d 230, 233-234, 594 N.E.2d 604 (1992).

{¶ 14} In this case, a review of the record reveals that the trial court, when conducting the initial questioning of the jury, explained to the prospective jurors the

different types of jury service, to set up the question regarding prior jury service.

The court stated:

> Jury service can be served in many ways. You can serve on a Grand Jury. And that would be where you hear usually one side of the case, and it's not the same numbers of folks that you have here, but they hear the facts of the case from one side and make a decision whether there's enough evidence for the case to proceed, whether there's probably a case here, and the Defendant probably did it. So in that event, they issue an indictment.
>
> So in that event, they issue an indictment. And the indictment, as I mentioned, or I will mention, informs the defendant that he or she has been charged with an offense.
>
> And the fact that it's filed may not be considered for any other purpose, because the plea of not guilty puts in issue all the essential elements of each offense.
>
> The Grand Jurors also have the option of not issuing, or no billing a case, so they say, No, there's not enough here to bring the case forward, and they'll no bill the case. So that's what a Grand Jury will do.
>
> Trial jury, or petit jury, P E T I T jurors, sit and hear the evidence and make a decision in a civil case whether by the preponderance of the evidence the Plaintiff has proven their case, or the parties have proven their case.
>
> And in a criminal case it's beyond a reasonable doubt. And I'll give you a legal definition. So you can make that decision.
>
> You may have served in Federal Court on a jury. * * *

(Tr. 85-86.)

{¶ 15} Shortly after and during the state's voir dire, the trial court set forth

the definition of beyond a reasonable doubt. The court stated the following:

> As I mentioned earlier, a criminal case begins with the filing of the indictment. The fact that it was filed may not be considered for any other purpose. The plea of not guilty is a denial of each and every

element of each count and puts at issue all the essential elements of each offense.

The Defendant is presumed innocent until his guilt is established beyond a reasonable doubt.

The Defendant must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offense charged in the indictment.

Reasonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced of the truth of the charge. Reasonable doubt is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs.

(Tr. 107-108.) The exact same instructions were repeated before opening statements and closing arguments. (Tr. 188 and 338-339 respectively.)

{¶ 16} In *State v. Ferguson*, 8th Dist. Cuyahoga No. 112650, 2024-Ohio-576, ¶ 21, during voir dire, the trial court used the words "more likely than not" to describe the probable-cause standard. This court found that "more likely than not" was an incorrect statement of the law, clarifying that the probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. *Id.,* citing *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). This court went on to say that probable cause requires "more than a bare suspicion" and the circumstances must demonstrate a "fair probability" that a crime has been committed. *Id.,* citing *State v. Martin*, 170 Ohio St.3d 181, 2022-Ohio-4175, 209

N.E.3d 688, ¶ 18. Nevertheless, this court found that the trial court's use of the words "more likely than not" did not rise to the level of plain error because the trial court repeatedly explained to the jury that the defendant was presumed innocent and to overcome this presumption there must be proof beyond a reasonable doubt.

{¶ 17} Furthermore, the *Ferguson* Court stated:

Ohio courts have repeatedly held that a trial court's statements during voir dire, similar to those at issue in this case, do not violate a defendant's due process rights. In *State v. Brown*, the Twelfth District found that a trial court's statements that the grand jury process is "a procedural safeguard to make certain that innocent people aren't drug into the courtrooms and required to" stand trial was not an error where the trial court repeatedly reiterated the presumption of innocence and the state's burden to prove the defendant's guilt at trial beyond a reasonable doubt. *State v. Brown*, 12th Dist. Butler No. CA2011-11-207, 2013-Ohio-1610, ¶ 44. Likewise, this court found that a trial court's statements — mirroring those in this case — that a grand jury returns an indictment when it finds "probable cause to believe that appears more likely than not that the person did commit the crime" did not have a materially adverse effect on the proceedings or prejudice the defendant where the court subsequently correctly stated the appropriate burden of proof at trial. *State v. McLoyd*, 8th Dist. Cuyahoga No. 112092, 2023-Ohio-4306, ¶ 22.

*Id.* at ¶ 25.

{¶ 18} In the instant case, although the trial court's statements regarding probable cause are technically incorrect, we cannot say that these remarks rise to the level of plain error. First, the trial court was speaking in generalities trying to educate the jury regarding the different types of jury service. Second, the trial court repeatedly informed that jury that the defendant was presumed innocent and set forth the instructions for reasonable doubt in its entirety three distinct times. Finally, the jury understood the court's instructions and the burden of proof that

was required at trial as evidenced by the following exchange between defense counsel and the jury: the defense counsel stated, "We start with he's presumed innocent. Right? What does that mean? If we ended the trial right now, what would your verdict be?" A juror answers, "Innocent." Defense counsel states, "Not guilty is what they call it. Innocent, right. And why is that, sir? Why would he be innocent right now?" And a different juror answers, "Because no evidence has been presented that proves to us beyond a reasonable doubt that the gentlemen committed a crime." Hence, after reviewing the jury instructions and the court's statements to the jury as a whole, we cannot say that the trial court's misstatement of the burden of proof required for a grand jury to indict was prejudicial, such that a manifest miscarriage of justice occurred.

{¶ 19} Accordingly, Jones's first assignment of error is overruled.

## B. Crim.R. 29 Motion for Acquittal was Properly Denied

{¶ 20} In the second assignment of error, Jones asserts that the trial court should have granted his Crim.R. 29 motion for acquittal because there was no direct evidence that the firearm was operable. Jones argues that the firearm was not recovered and no threats were made that would indicate the firearm was operable; therefore, the firearm specifications should have been dismissed. The state argues that R.C. 2923.11(B)(2) specifically allows the jury to rely on circumstantial evidence to prove Jones used a firearm in the commission of the offense. We find Jones's arguments unpersuasive.

{¶ 21} A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence. *State v. Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, ¶ 19-20, citing *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 13. Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for an offense. *Id.,* citing *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134, ¶ 21. Accordingly, we review a trial court's denial of a defendant's motion for acquittal using the same standard we apply when reviewing a sufficiency-of-the-evidence claim. *Taylor* at ¶ 21-23 ("Crim.R. 29(A) and sufficiency of evidence review require the same analysis."), citing *Cleveland v. Pate*, 8th Dist. Cuyahoga No. 99321, 2013-Ohio-5571.

{¶ 22} When reviewing the sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. When performing a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *Capp* at ¶ 19-20, citing *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *State v. Thompkins*, 78 Ohio

St.3d 380, 387, 678 N.E.2d 541 (1997); *Jenks* at paragraph two of the syllabus. A sufficiency-of-the-evidence argument is not a factual determination, but a question of law. *Thompkins* at 386.

{¶ 23} In *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, the Ohio Supreme Court cautioned:

> But it is worth remembering what is not part of the court's role when conducting a sufficiency review. It falls to the trier of fact to "'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" [*State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 24], quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, an appellate court's role is limited. It does not ask whether the evidence should be believed or assess the evidence's "credibility or effect in inducing belief." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. Instead, it asks whether the evidence against a defendant, if believed, supports the conviction. *Thompkins* at 390 (Cook, J., concurring).

*Id.* at ¶ 16.

{¶ 24} Because the firearm was not recovered in this case, nor was it fired, the state relied on circumstantial evidence to convict Jones of the firearm specifications. We note that "[p]roof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *Brook Park v. Gannon*, 2019-Ohio-2224, 137 N.E.3d 701, ¶ 24 (8th Dist.), quoting *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18, citing *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988); *Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge

such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *Id.*, quoting *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. In contrast, "circumstantial evidence requires the drawing of inferences that are reasonably permitted by the evidence." *Id.*; *see also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683 ("Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.").

{¶ 25} Circumstantial evidence and direct evidence inherently possess the same probative value. *Gannon* at ¶ 25, citing *Jenks*, at paragraph one of the syllabus. "Although there are obvious differences between direct and circumstantial evidence, those differences are irrelevant to the probative value of the evidence — circumstantial evidence carries the same weight as direct evidence." *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 739 N.E.2d 749 (2001). "Since circumstantial evidence and direct evidence are indistinguishable so far as the * * * fact-finding function is concerned, all that is required of the [factfinder] is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks* at 272. "'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence.'" *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, ¶ 9, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 26} R.C. 2941.141(A) governs the one-year firearm specification and requires the jury to find that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.145(A) governs the three-year firearm specification and requires the jury to find that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶ 27} A "firearm" is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). It includes an unloaded firearm and any firearm that is inoperable but that can readily be rendered operable. *Id.* "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2), *see also Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, at paragraph one of the syllabus.

{¶ 28} "Thus, with respect to operability of a firearm in cases where no shots are fired and the firearm is not recovered, circumstantial evidence, such as the representations and actions of the gun operator, are of crucial importance." *State v. Lavette*, 8th Dist. Cuyahoga No. 106169, 2019-Ohio-145, ¶ 57, citing *State v. Fulton*,

8th Dist. Cuyahoga No. 96156, 2011-Ohio-4259, ¶ 34; *State v. Ware*, 9th Dist. Summit No. 22919, 2006-Ohio-2693, ¶ 13.

{¶ 29} In this case, the testimony of Patel and Mistry supports the conclusion that Jones used an operable handgun to facilitate the robbery. Both testified to the demands made by Jones, as well as that he held the gun on them while they handed over the money and until Jones walked out the door. Both testified that they thought the gun was real and that Jones would use it. Patel testified that she thought this was the last day of her life. As recognized by this court, "[t]he implicit threat while brandishing the gun so as to threaten [the victims] is sufficient to establish its operability." *See State v. Cummings*, 8th Dist. Cuyahoga No. 106458, 2018-Ohio-4214, ¶ 22 (finding sufficient evidence supporting firearm specification where the defendant ordered the victim to empty his pockets while pointing a gun at the victim's chest). Furthermore, Patel and Mistry's testimony was corroborated by surveillance video from the store. (State's exhibit Nos. 1 and 20.) Based upon these facts, we find the firearm specifications were supported by sufficient evidence.

{¶ 30} Accordingly, Jones's second assignment of error is overruled.

## III. Conclusion

{¶ 31} We find that Jones was not prejudiced by the trial court's incorrect definition of probable cause set forth during the voir dire process. Further, we find that there was sufficient evidence to support that the gun used in the robbery was operable.

{¶ 32} Accordingly, the judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

LISA B. FORBES, P.J., and
EILEEN T. GALLAGHER, J., CONCUR