[Cite as *In re H.R.*, 2024-Ohio-739.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE H.R.                                    :

                                       No. 113026

                                       :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** February 29, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL23105771

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah E. Hutnik, Assistant Prosecuting Attorney, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and Britta Barthol, Assistant Public Defender, *for appellee.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Appellant the state of Ohio appeals from the juvenile court's July 13, 2023 judgment denying its motion to transfer jurisdiction of the juvenile's, H.R., case to the common pleas court for adult criminal prosecution. After a thorough review of facts and pertinent law, we affirm the juvenile court's judgment and remand for further proceedings.

**Procedural and Factual History**

{¶ 2} A seven-count complaint against H.R. was filed in juvenile court, alleging that the juvenile committed acts that, if committed by an adult, would constitute attempted murder (Count 1); felonious assault (Counts 2 and 3); having weapons while under disability (Count 4); improperly handling firearms in a motor vehicle (Count 5); breaking and entering (Count 6); and criminal damaging or endangering (Count 7). Counts 1, 2, 3, and 6 contained one- and three-year firearm specifications. H.R. was 17 years old at the time of the alleged acts.

{¶ 3} The state filed a motion to transfer jurisdiction of the case from the juvenile court to the court of common pleas, general division. The juvenile court held a probable cause hearing on the motion, at which the following testimony was elicited from the sole witness, the investigating Cleveland police detective, John Kosko.

{¶ 4} The complaint arose from the May 4, 2023 shooting of the 18 year-old victim, Mohamed Ali Mohamed. Mohamed and H.R. had worked together at a KFC restaurant. Approximately two weeks prior to the within incident, Mohamed and H.R. had a physical altercation while at work. As a result of the altercation, H.R. was fired from the KFC; Mohamed was not terminated.

{¶ 5} Three Ring doorbell cameras captured the May 4 shooting. That evening Mohamed arrived home from his KFC job around midnight; someone driving a white van dropped him off. The first recording (state's exhibit No. 3) showed that as Mohamed walked toward his house someone yelled, apparently to

get his attention. Mohamed stopped, turned in the direction of the voice, and immediately brandished a gun he had at his side.

{¶ 6} Seconds later, an individual wearing all black, a hoodie, and a mask up to his eyes, came from behind Mohamed, tackled him to the ground, and numerous shots were fired. The muzzle flash appeared to come from the person who tackled Mohamed. The tackler ran off to a black vehicle that was parked on the street across from Mohamed's house. Another person also ran from the scene, got into the black vehicle, and the driver drove away. The second individual was never identified. This shooting incident occurred in less than 30 seconds.

{¶ 7} The second video recording (state's exhibit No. 4) showed Mohamed, who was lying on the ground, being approached by a male. The man forcefully moved Mohamed around, and it appeared as if he was looking for something near Mohamed or on his person.

{¶ 8} The third video recording (state's exhibit No. 5) showed another man approach Mohamed. According to Detective Kosko, that man was Mohamed's brother. First responders were called to the scene.

{¶ 9} Sergeant Day of the Cleveland police was the first law enforcement official to arrive on the scene. Mohamed told the sergeant that "Abed" shot him. Six 9 mm casings were recovered from the scene. The police also recovered the victim's gun and discovered that its magazine was full; thus, the police concluded that his gun was not discharged during the incident. Mohamed was transported to the

hospital; he sustained several gunshot wounds, including to his face, arms, legs, and abdomen. One of his lungs and his liver were punctured as a result.

{¶ 10} Detective Kosko interviewed Mohamed at the hospital; the detective knew at that time that Mohamed had identified "Abed" as his shooter. Mohamed told the detective that H.R. shot him. Mohamed informed the detective about the "bad blood" between himself and H.R. and explained that he believed H.R. was the perpetrator because H.R. knew his work schedule. However, Mohamed admitted that he did not believe H.R. knew where he lived. Mohamed also admitted that, with the exception of the eyes, the shooter's face was covered by a mask. Detective Kosko did not testify that the shooter said anything to Mohamed. The detective further did not question Mohamed about him telling Sergeant Day that "Abed" was the shooter.

{¶ 11} Mohamed told Detective Kosko that he carried a gun for protection. The detective described Mohamed as not being fully cooperative with the investigation. Specifically, the detective believed the person who dropped Mohamed off at home that evening may have been in a good position to see the perpetrator and wanted to interview him or her, but Mohamed would not tell the detective that person's name. Mohamed also indicated that H.R. may have said something about him on social media, but he would not grant the detective access to his phone to investigate.

{¶ 12} During his investigation, Detective Kosko learned that the black vehicle in which the two individuals left in right after the shooting was driven by an individual identified as A.M. The detective contacted A.M., who told him he was

driving "Tyshawn" and "Vonn" around to collect money. Detective Kosko learned that "Tyshawn" and "Vonn" are not nicknames associated with H.R., and that in fact, they were fictious names. The detective further learned that "Abed" was not a nickname associated with H.R.; rather, it is a derogatory reference to people of a certain ethnicity.

{¶ 13} When questioned as to how he decided the shooter was H.R., Detective Kosko stated that, in addition to what Mohamed told him, he "spoke to the victim's family and got some information that it could be" H.R. and his brother. Detective Kosko obtained a driver's license photograph of H.R. and showed it to Mohamed, who identified him as his shooter. Officer Kosko learned that a neighbor saw the men involved in the shooting, but the officer did not present a photographic lineup to her to see if she could identify the shooter.

{¶ 14} On this testimony, the juvenile court denied the state's motion to transfer the case to the common pleas court. The court noted that the state's burden of proof was probable cause and that "[t]he obvious issue in this case is identification." Tr. 79. The court explained that when it considered the evidence in light of a probable-cause standard of proof, "I do not find that the State of Ohio has met its burden as it relates to any counts of the complaint * * * based on the testimony regarding all of the conversations with the victim, I don't find that that's more than a mere suspicion of guilt." *Id.* at 80. The state now appeals, raising the following sole assignment of error:

I. The trial court erred as a matter of law when it found no probable cause to believe the juvenile committed the offenses charged in the juvenile court complaint.

**Law and Analysis**

{¶ 15} Initially, we consider our jurisdiction over this matter. The state has a limited right of appeal in criminal and delinquency matters. By statute, a prosecuting attorney "may appeal as a matter of right any decision of a trial court in a criminal case, or any decision of a juvenile court in a delinquency case, which decision grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants postconviction relief * * *." R.C. 2945.67(A).

{¶ 16} As will be discussed below, this is a mandatory bindover case. The Supreme Court of Ohio has held that a juvenile court order that denies a transfer of jurisdiction in a mandatory bindover case "bars the state from prosecuting a juvenile offender as an adult for a criminal offense. It is therefore the functional equivalent of a dismissal of a criminal indictment and constitutes a final order from which the state may appeal as a matter of right." *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, syllabus. Thus, the order from which the state appeals in this case is a final, appealable order and we have jurisdiction to consider this appeal.

{¶ 17} R.C. 2151.12 governs bindovers from juvenile court to adult court. Under R.C. 2151.12(A)(1)(a)(i), governing mandatory bindovers,

> (a) After a complaint has been filed alleging that a child is a delinquent child for committing one or more acts that would be an offense if committed by an adult, if any of those acts would be aggravated

murder, murder, attempted aggravated murder, or attempted murder if committed by an adult, the juvenile court at a hearing shall transfer the case if either of the following applies:

(i) The child was sixteen or seventeen years of age at the time of the act charged that would be aggravated murder, murder, attempted aggravated murder, or attempted murder and there is probable cause to believe that the child committed the act charged.

{¶ 18} H.R. was charged in Count 1 with attempted murder with one- and three-year firearm specifications and was 17 years old at the time of the alleged act. Therefore, this case falls within the purview of the mandatory bindover provision set forth in R.C. 2152.12(A)(1)(a)(i). Pursuant to Juv.R. 30(A), "[i]n any proceeding where the court considers the transfer of a case for criminal prosecution, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged * * *."

{¶ 19} The Supreme Court of Ohio has held that "the state must present credible evidence of every element of an offense to support a finding of probable cause, but that evidence does not have to be unassailable." *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 46, citing *State v. Iacona*, 93 Ohio St.3d 83, 752 N.E.2d 937 (2001). The Supreme Court described the juvenile court's role in bindover proceedings as that of a "gatekeeper" because it is "charged with evaluating whether sufficient credible evidence exists" to warrant transfer to adult court. *Id.*, citing *In re A.J.S.*, 173 Ohio App.3d 171, 2007-Ohio-3216, 877 N.E.2d 997 (10th Dist.). The court stated that the state's burden is to produce evidence that "'raises more than a mere suspicion of guilt.'" *State v. Martin*, 170 Ohio St.3d 181,

2022-Ohio-4175, 209 N.E.3d 688, ¶ 19, quoting *Iacona* at 93; *see also In re E.S.*, Slip Opinion No. 2023-Ohio-4273, ¶ 1 (reaffirming *Martin* and *Iacona*).

{¶ 20} A juvenile court's probable cause determination in a bindover proceeding involves questions of both fact and law. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 51. An appellate court will defer to the juvenile court's "determinations regarding witness credibility, but [will] review de novo the legal conclusion whether the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged." *Id.*

{¶ 21} Probable cause "deals with probabilities." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), citing *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). It "'is a fluid concept— turning on the assessment of probabilities in particular factual contexts.'" *Pringle* at 370-371, quoting *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause exists when the facts and circumstances are sufficient to provide a reasonable belief that the accused has committed a crime. *Brinegar* at 175-176, citing *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The inquiry requires the judge to review all the circumstances and make "a practical, common-sense decision" as to whether probable cause is present. *Gates* at 238.

{¶ 22} Concerning witness credibility, "[t]he trier of fact is in the best position to make credibility determinations because it is able to view the demeanor

of a witness while he or she is testifying; this court cannot. The trier of fact is therefore in the best position to determine if the proffered testimony is credible." *Khatib v. Peters*, 2017-Ohio-95, 77 N.E.3d 461, ¶ 28 (8th Dist.).

{¶ 23} The state contends that the juvenile court erred in not transferring the case because the state provided credible evidence of every element of the offenses to support a finding of probable cause to believe H.R. committed them. The state is essentially challenging the juvenile court's conclusion that there is not more than "a mere suspicion of guilt," and in particular, the issue the court had with identification. According to the state, it presented sufficient evidence to demonstrate that H.R. was the shooter:

> Here, the State presented evidence that Mohamed worked with H.R. at KFC. Mohamed knew H.R. well enough to get into a physical altercation at work two weeks prior to this incident. Even though the shooter was wearing a mask that covered the bottom of his face, Mohamed recognized the shooter as H.R. Mohamed also identified H.R. in a photograph.

Appellant's brief, p. 7.

{¶ 24} The state further notes that the juvenile court "did not make a credibility determination about Det. Kosko's testimony, but instead held that there wasn't more than a mere suspicion that H.R. committed these offenses." The state contends that the juvenile court's concern was "misplaced," because "[a]ny discrepancy or contradiction could be explained at a trial and need not be addressed at a probable cause hearing." Without citation to any legal authority, the state

contends that "[a] victim's identification of an assailant is sufficient for a probable cause determination."

{¶ 25} Although the trial court did not make an explicit determination regarding Detective's credibility, it is evident from the court's denial of the state's request to bind this case over that the court did not find the detective's statement that he found Mohamed's identification of H.R. as his shooter credible. *See T.M. v. R.H.*, 9th Dist. Summit No. 29556, 2020-Ohio-3013, ¶ 39. Further, in addition to Detective Kosko's testimony, the trial court also viewed the video evidence from the three Ring doorbell cameras, which factored into its decision.

{¶ 26} We are not persuaded by the state's contention that Mohamed's identification of H.R. as his shooter was credible because he knew him well enough to get in an altercation with him two weeks before the shooting. One does not have to know someone well to get into an altercation with them — altercations between strangers happen all the time. We are also not persuaded by the state's contention that Mohamed's identification alone was sufficient to establish probable cause and any inconsistencies would be ironed out at trial. That approach would gut the trial court's ability to make a credibility determination, a result that would be contrary to law. We reiterate the deference we afford to a trial court's credibility determinations, because the trial court is in the best position to make those determinations.

{¶ 27} Further, Mohamed's identification of H.R. from his driver's license photo does not advance the state's identification contentions. This is not a case

where the victim did not know his alleged assailant but was able to get a good look at him, and then later identify him. Rather, Mohamed told Detective Kosko that it was H.R. who had attacked him because of the bad blood between them — Mohamed always knew what H.R. looked like. Moreover, Detective Kosko did not have the full picture regarding the animosity between H.R. and Mohamed because Mohamed was less than cooperative with the investigation.

{¶ 28} On this record, we agree with the juvenile court's determination that the state's evidence did not raise more than a mere suspicion of guilt. That is, the state failed to present sufficient credible evidence — probable cause — on the issue of identification to warrant transfer of the case from juvenile court to adult court. We note that Detective Kosko did not identify H.R. from the video evidence; the second person on the video (also unidentified) appeared to be looking for something on or about Mohamed's person; the entire incident occurred in under 30 seconds at night; the masked perpetrator attacked Mohamed from behind and immediately tackled him to the ground; and there was no evidence that H.R. had threatened Mohamed, or even knew where he lived. The state's assignment of error is therefore overruled.

{¶ 29} Judgment affirmed and case remanded for further proceedings.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MARY EILEEN KILBANE, P.J., and
EMANUELLA D. GROVES, J., CONCUR