[Cite as *State v. Hayes*, 2025-Ohio-5126.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. CT2025-0055 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Muskingum County Court of Common Pleas, Case No. CR2024-0771 |
| IAN HAYES | |
| Defendant – Appellant | Judgment: Affirmed |
| | Date of Judgment Entry: November 12, 2025 |

**BEFORE:** William B. Hoffman, Kevin W. Popham, David M. Gormley, Appellate Judges

**APPEARANCES:** Ron Welch, Esq., Muskingum County Prosecuting Attorney, Joseph A. Palmer, Assistant Prosecuting Attorney, for Plaintiff-Appellee; Chris Brigdon, for Defendant-Appellant

OPINION

*Hoffman, P.J.*

**{¶1}** Defendant-appellant Ian Hayes appeals the judgment entered by the Muskingum County Common Pleas Court convicting him following jury trial of kidnapping with a repeat violent offender specification (R.C. 2905.01(A)(3); R.C. 2941.149(A)) and strangulation (R.C. 2903.18(B)(3)), and sentencing him to an aggregate term of incarceration of twenty-one to twenty-six and one-half years. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** On November 2, 2024, Appellant was staying at the victim's house. He could not find a red hoodie he had purchased for his son's birthday and blamed the victim's children for taking the hoodie. He became upset with the victim, who claimed her children had not been in Appellant's things. He slapped the victim, knocked the victim to the ground, got on top of the victim, and choked her. The victim feared for her life and found it difficult to breathe. She attempted to reach a baseball bat which she kept beneath her bed but was unable to do so. Appellant released the victim. Appellant refused to leave, and the victim went outside with her children. The victim called 911.

**{¶3}** When police arrived, they noticed marks on the victim's neck. The victim claimed the marks were hickeys. Patrolman Joe Nelson of the Zanesville Police Department suggested to the victim the marks were not all hickeys. The victim looked in the mirror and confirmed some of the marks were caused by Appellant choking her. Officers who responded to the scene noted some of the marks were consistent with hickeys, while some were consistent with finger marks caused by strangulation.

{¶4}   While Appellant was in jail, a phone call was recorded between Appellant and the victim.  Appellant repeatedly told the victim the marks on her neck were all hickeys, and questioned why she was pressing charges against him.  The victim told him there were three fingerprints on her neck, which Appellant denied.  The victim asked Appellant why he changed from the nice man she initially knew.  Appellant responded he changed because of "shit coming up missing."  State's Exhibit D.  Appellant told the victim he did not want her to press charges and claimed he got played by the victim.  The victim told him she thought she was going to pass out when he choked her.

{¶5}   Appellant was indicted by the Muskingum County Grand Jury with aggravated burglary with a repeat violent offender specification, kidnapping with a repeat violent offender specification, and two counts of strangulation.  The case proceeded to jury trial in the Muskingum County Common Pleas Court, with the repeat violent offender specification tried to the court.

{¶6}   The victim testified on behalf of Appellant at trial.  She testified Appellant lives with her and had lived with her for several months.  She testified she and Appellant had "very rough sex" on November 1, 2024, and into the early morning hours of November 2, 2024.  Tr. 251.  She testified the sex involved biting and choking.  On November 2, 2024, she heard Appellant question her son about a missing hoodie.  When Appellant became angry, she was triggered because of her prior relationships.  She asked Appellant to leave, and when he refused, she called 911.  She testified all the marks on her neck were hickeys, and Appellant would never put his hands on her.  She testified she did not remember what she told the police.

{¶7} The jury found Appellant not guilty of aggravated burglary and one count of strangulation. The jury found Appellant guilty of kidnapping and one count of strangulation. The trial court convicted Appellant upon the jury's verdict and found Appellant guilty of the repeat violent offender specification. The trial court sentenced Appellant to an indefinite prison term of eleven to sixteen and one-half years for kidnapping, ten years of incarceration for the repeat violent offender specification, and twelve months of incarceration for strangulation. The trial court ordered the sentence for strangulation to be served concurrently to the sentence for kidnapping, and the sentence for the repeat violent offender specification to be served consecutive to the sentence for kidnapping, for an aggregate term of incarceration of twenty-one to twenty-six and one-half years, with eleven years of incarceration imposed as mandatory time.

{¶8} It is from the May 30, 2025, judgment of the trial court Appellant prosecutes his appeal, assigning as error:


I. INSUFFICIENT EVIDENCE AS IT RELATES TO COUNT 28 FELONIOUS ASSAULT IN VIOLATION OF O.R.C. 2903.11(A)(1), 2903.11(D)(1)(A) [SIC].

II. [THE JUDGMENT IS] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE FOR KIDNAPPING.

I.

{¶9}    Appellant argues the State failed to present sufficient evidence to convict him of kidnapping and strangulation.  We disagree.

{¶10}  An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶11}  Appellant was convicted of kidnapping in violation of R.C. 2905.01(A)(3):


(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(3) To terrorize, or to inflict serious physical harm on the victim or another[.]


{¶12}  Appellant argues the State did not present evidence he removed the victim from the place where she was found or restrained the liberty of the victim.

{¶13}  The victim told police Appellant knocked her to the ground, got on top of her, and choked her.  She testified she tried to reach a baseball bat she kept under the bed because she feared for her life, but was unable to do so.  This evidence is sufficient, if believed by the jury, to prove Appellant restrained the victim's liberty while choking her.

**{¶14}** Appellant was also convicted of strangulation in violation of R.C. 2903.18(B)(3):

(B) No person shall knowingly do any of the following:

(3) Cause or create a substantial risk of physical harm to another by means of strangulation or suffocation.

**{¶15}** R.C. 2903.18(A)(1) defines "strangulation or suffocation" as "any act that impedes the normal breathing or circulation of the blood by applying pressure to the throat or neck, or by covering the nose and mouth."

**{¶16}** Appellant argues the State failed to present sufficient evidence the victim's breathing or circulation was impeded. He argues standing alone, red marks on the victim's neck are insufficient to prove obstruction of her breathing or circulation.

**{¶17}** Patrolman Jonathan Moore testified the victim said Appellant grabbed her by the throat, and she found it hard to breathe. In the jail call, the victim told Appellant she thought she was going to pass out. Patrolman Nelson testified the victim said she feared for her life when Appellant was choking her. We find the State presented sufficient evidence, if believed by the jury, to prove the victim's breathing was obstructed when Appellant grabbed her around her neck.

**{¶18}** The first assignment of error is overruled.

II.

**{¶19}** In his second assignment of error, Appellant argues the judgment convicting him of kidnapping and strangulation is against the manifest weight of the evidence. We disagree.

**{¶20}** The term "manifest weight of the evidence" relates to persuasion. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds, State v. Smith,* 80 Ohio St.3d 89, 102 (1997); *State v. Martin,* 2022-Ohio-4175, ¶ 26.

**{¶21}** In determining whether a judgment is against the manifest weight of the evidence, an appellate court reviews the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387. Sitting as the "thirteenth juror," the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion. *Id.*

**{¶22}** When conducting a manifest weight review, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient. *Id.*; *State v. Issa,* 93 Ohio St.3d 49, 67 (2001). Appellate courts have traditionally presumed the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, all critical factors in

evaluating credibility. *Eastley*, 2012-Ohio-2179 at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

**{¶23}** A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." (Internal quotations omitted.) *Thompkins*, 78 Ohio St.3d at 387. To reverse a conviction on manifest-weight grounds, all three judges on the appellate panel must concur. Ohio Const., Art. IV, § 3(B)(3).

**{¶24}** Appellant argues this is the exceptional case in which the evidence weighs heavily against his convictions because the victim recanted her statements to police and testified at trial in Appellant's defense. However, the victim's prior statements were at least partially corroborated by the police officers who responded to her 911 call. The police officers who responded to the scene testified some of the marks on the victim's neck were hickeys, but some of the marks were consistent with her statement Appellant choked her with his hands. Further, the officers found the baseball bat under the bed which the victim said she was reaching for while restrained and choked by Appellant. The officers' personal observations corroborated the victim's statements on the day of the offenses.

**{¶25}** Further, the jury had the opportunity to listen to the victim's 911 call and the jail call with Appellant, as well as to listen to her trial testimony. While the recordings of the 911 call and the jail call are a part of the record before this Court on appeal, we have only the transcript of the victim's trial testimony, from which we are unable to observe the victim's demeanor, gestures, and tone during her testimony.

**{¶26}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *State v. Butler*, 2024-Ohio-4651, ¶ 75 (5th

Dist.). "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Williams*, 2024-Ohio-5578, ¶ 61 (5th Dist.), *quoting Seasons Coal,* 10 Ohio St.3d at 80. "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard,* 2025-Ohio-161, ¶ 66 (5th Dist.).

**{¶27}** We find the jury did not lose its way in finding the victim's earlier statements about the incident to be more credible than her trial testimony. Police photographed a baseball bat under the victim's bed, which supported her statement she attempted to reach for a baseball bat to defend herself while Appellant held her on the floor, choking her. Police officers who responded to the 911 call testified some of the marks on the victim's neck were consistent with strangulation. We find the judgment convicting Appellant of kidnapping and strangulation is not against the manifest weight of the evidence.

**{¶28}** The second assignment of error is overruled.

III.

**{¶29}** Appellant argues the trial court erred in imposing the maximum sentence for kidnapping. We disagree.

**{¶30}** Appellant argues the trial court did not make the requisite finding Appellant committed the worst form of the offense before imposing a maximum sentence, relying on *State v. Steward,* 2003-Ohio-4082, ¶ 18. However, after the *Steward* decision the sentencing statute was changed, and the Ohio Supreme Court recognized, "Trial courts

have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Mathis,* 2006-Ohio-855, ¶ 62. The trial court in this case was therefore not required to make any specific findings to impose a maximum sentence for kidnapping.

**{¶31}** We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Roberts,* 2020-Ohio-6722, ¶ 13 (5th Dist.), *citing State v. Marcum*, 2016-Ohio-1002. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for sentencing where we clearly and convincingly find either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *Id., citing State v. Bonnell*, 2014-Ohio-3177.

**{¶32}** When sentencing a defendant, the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *State v. Hodges*, 2013-Ohio-5025, ¶ 7 (8th Dist.).

**{¶33}** "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). To achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. *Id*. Further, the sentence imposed shall be

"commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

{¶34} R.C. 2929.12 lists general factors which must be considered by the trial court in determining the sentence to be imposed for a felony and gives detailed criteria which do not control the court's discretion, but which must be considered for or against severity or leniency in a particular case. The trial court retains discretion to determine the most effective way to comply with the purpose and principles of sentencing as set forth in R.C. 2929.11. R.C. 2929.12.

{¶35} Nothing in R.C. 2953.08(G)(2) permits this Court to independently weigh the evidence in the record and substitute our own judgment for that of the trial court to determine a sentence which best reflects compliance with R.C. 2929.11 and R.C. 2929.12. *State v. Jones*, 2020-Ohio-6729, ¶ 42. Instead, we may only determine if the sentence is contrary to law.

{¶36} A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range." *State v. Pettorini*, 2021-Ohio-1512, ¶¶ 14-16 (5th Dist.).

{¶37} The trial court stated it considered the principles and purposes of R.C. 2929.11, and the factors listed in R.C. 2929.12. The sentence is within the statutory range. Although not required to make findings, the trial court noted in its sentencing entry Appellant has a long criminal history with felony convictions, and Appellant showed no

remorse. At the time of the sentencing hearing, Appellant was serving a sentence for possession of methamphetamine, resisting arrest, and obstructing official business. Sent. Tr. 19. Appellant had a lengthy criminal history, including criminal damaging, criminal trespassing, menacing, and possession of drug paraphernalia convictions. Sent. Tr. 19-20. We find the maximum sentence was not contrary to law.

{¶38} The third assignment of error is overruled.

{¶39} The judgment of the Muskingum County Common Pleas Court is affirmed. Costs are assessed to Appellant.

By: Hoffman, P.J.

Popham, J. and

Gormley, J. concur